IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Case No. 1:25-CR-143 |
| ) | |
| MOHAMMAD SHARIFULLAH, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MR. SHARIFULLAH'S REPLY IN SUPPORT OF MOTION FOR ACCESS TO THE GOVERNMENT'S CIPA § 4 FILINGS

The government's opposition mischaracterizes the defense request and ignores the permissive nature of CIPA § 4's text. The defense does not dispute that courts may authorize ex parte proceedings under Section 4. Rather, the defense asks this Court to exercise its discretion—expressly preserved by Congress's use of "may" rather than "shall"—to require disclosure of the government's Section 4 filings to cleared defense counsel in a classified setting. This approach would fulfill CIPA's core purpose: protecting both national security and the defendant's constitutional rights.[1]

---

[1] The defense also moves to strike "Lindsey Halligan" as the "United States Attorney and Special Attorney" in all pleadings in this matter, including the government's Response, ECF 75. Although the government has until January 20, 2026, to file a response to the pending motion to disqualify Ms. Halligan from participation in this case, the Fourth Circuit's referral of all "pending and future" motions concerning disqualification to U.S. District Judge Cameron Currie means that the resolution of this issue, pending a contrary determination by the Fourth Circuit, remains governed by Judge Currie's opinions in *United States v. Comey*, ___ F. Supp. 3d ___, 2025 WL 3266932 (E.D. Va. Nov. 24, 2025), and *United States v. James*, ___ F. Supp. 3d ___, 2025 WL 3266931 (E.D. Va. Nov. 24, 2025), in which the Court held that "[t]he appointment of Ms. Halligan as Interim U.S. Attorney violated 28 U.S.C. § 546 and the Appointments Clause of the U.S. Constitution." *James*, 2025 WL 3266931, at *13.

## I. The Permissive Text of CIPA § 4 Authorizes the Court to Require Disclosure to Cleared Counsel.

The government asserts that "Section 4 Proceedings Must Take Place *Ex Parte*," Gov't Resp. at 2, but this overstates both the statutory text and applicable precedent. CIPA § 4 provides that "[t]he court *may* permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone." 18 U.S.C. App. 3 § 4 (emphasis added); *accord* H.R. CONF. REP. 96-1436 at 10, 1980 U.S.C.C.A.N. 4307, 4308 (1980) (noting that "a motion requesting such authority could be heard in camera and ex parte"). As the defense's motion explained, "[t]he use of the permissive 'may' in the plain text of CIPA § 4, rather than the mandatory 'shall,' makes clear that courts retain discretion to require disclosure of the government's Section 4 filing to cleared counsel on a case-by-case basis." Def. Mot. at 6 (citing *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016)).

Congress knows how to mandate ex parte proceedings when it chooses to do so. In CIPA itself, the statute provides that in the context of substitutions for classified

---

Because the government has not obtained a stay of those rulings pending appeal, Ms. Halligan is not properly listed as a United States Attorney for this District. While 28 U.S.C. § 515 authorizes the appointment of a "special assistant to the Attorney General or special attorney," the Attorney General cannot circumvent the Appointments Clause and the statutory scheme governing the appointment of interim and acting U.S. Attorneys by merely vesting the responsibilities of the U.S. Attorney in a "special attorney." *United States v. Giraud*, 160 F.4th 390, 395, 403 (3d Cir. 2025) (noting that special attorneys "assist United States attorneys" and rejecting a "*de facto* U.S. attorney-by-delegation theory" as inconsistent with statutory scheme); *United States v. Trump*, 740 F. Supp. 3d 1245, 1265 (S.D. Fla. 2024) (rejecting use of 28 U.S.C. § 515 to appoint a special attorney "who does not assist a United States Attorney but who replaces the role of United States Attorney within his jurisdiction").

information, the government may submit an affidavit of the Attorney General and, "[i]f so requested by the United States, the court *shall* examine such affidavit in camera and ex parte." CIPA § 6(c)(2) (emphasis added). In the Foreign Intelligence Surveillance Act, likewise, "Congress provided that courts '*shall*' review FISA applications and related materials ex parte if the government submits an affidavit supporting such review." Def. Mot. at 7 (citing 50 U.S.C. § 1806(f)) (emphasis added); *accord ACLU Found. of S. Cal. v. Barr*, 952 F.2d 457, 462 (D.C. Cir. 1991) ("Federal district courts 'shall' conduct ex parte, in camera reviews to determine whether FISA surveillance, undertaken pursuant to an order of the FISA Court, was 'lawfully authorized and conducted'" under 50 U.S.C. § 1806(f)).

CIPA § 4 does not use the word "shall," which means the Court retains discretion to disclose § 4 filings to the defense. As another district court observed, "in those rare situations where the government is compelled to make an *ex parte* Section 4 filing containing arguments in support of immateriality, the government should fully explain why the *ex parte* filing is necessary and appropriate. The Court will then carefully scrutinize any such filing to determine whether it should remain an ex parte filing *or whether it should be served on the defendant*." *United States v. Libby*, 429 F. Supp. 2d 46, 48 (D.D.C. 2006) (emphasis added). In other words, the Court retains discretion to require disclosure of the government's § 4 filing before making the discoverability determination. Congress's choice of "may" in CIPA § 4 was deliberate and preserves judicial discretion to require disclosure.

The government cites numerous cases holding that courts have permitted ex

3

parte proceedings under Section 4, but none holds that courts *must* do so in all circumstances. Indeed, based on the plain text of CIPA § 4, ex parte proceedings are permissible, not mandatory. *See, e.g., United States v. Abu Ali*, 528 F.3d 210, 246 (4th Cir. 2008) (noting that CIPA § 4 "*allows* the United States to request such an authorization [to withhold discovery] by ex parte written statement") (emphasis added); *United States v. Moussaoui*, 333 F.3d 509, 514 n.6 (4th Cir. 2003) (noting that § 4 "allows the district court to authorize the government to redact information from classified documents before providing such documents to the defendant during pretrial discovery"). The question is not whether ex parte proceedings are allowed—they plainly are—but whether this Court should exercise its discretion to require the government's § 4 filings to "be served on the defendant." *Libby*, 429 F. Supp.2d at 48.

## II. The Government's National Security Concerns Are Fully Addressed by Limiting Disclosure to Cleared Counsel in a SCIF.

The government contends that providing defense access to Section 4 filings "would eviscerate the protections afforded by the statute, thus rendering them meaningless." Gov't Resp. at 1. This assertion ignores the defense's actual request. The defense seeks access only for cleared members of the defense team, only in a classified setting (a SCIF), and only so the defense can identify whether additional classified information should be included in a supplemental Section 5 notice. Def. Mot. at 8. As the defense explained, "[a]llowing such access will not adversely impact national security in any way because (a) disclosure would be limited to cleared members of the defense; and (b) the defense would only retain access to classified information identified in a Section 4 filing if the defense subsequently identified such

information as relevant and material to the defense in a supplemental classified § 5 notice." *Id.*

Critically, if the Court ultimately grants the government's Section 4 motions and determines that certain classified information is immaterial and thus need not be disclosed, the Section 4 filing would simply be returned to the government. The only "cost" to allowing cleared defense counsel to review the filings is the possibility that the defense might persuade the Court that additional classified information is discoverable. That is not a cost—it is the adversarial process functioning as designed.

### III. Only Defense Counsel Can Adequately Advocate for What Information Is Material to the Defense.

The government claims that ex parte evaluation of § 4 filings does not implicate a defendant's right to information that is either "relevant and helpful" or "essential to a fair determination of a cause," *United States v. Smith*, 780 F.2d 1102, 1107 (4th Cir. 1985) (en banc), because the Court simply "place[s] [itself] in the shoes of defense counsel" when reviewing classified material ex parte. *See* Gov't Resp. at 8 (citing *United States v. Amawi*, 695 F.3d 457, 471 (6th Cir. 2012)). But no matter how conscientiously the Court reviews the government's submissions, "[t]he determination of what may be useful to the defense can properly and effectively be made only by an advocate." *Dennis v. United States*, 384 U.S. 855, 875 (1966).

The Supreme Court's observation in *Dennis* is particularly apt in this case because the government's Section 5 filing makes clear that it does not fully understand the defense theory of the case. The only relief the defense seeks is the opportunity to advocate for access to material information based upon a review of

5

that information by cleared counsel in a secure environment.

While the government endorses the defense's submission of an ex parte pleading to assist the Court in evaluating the materiality of withheld information, that submission does not even the playing field because the defense remains unable to adequately address potential materiality and relevance without access to the withheld information. Dueling ex parte submissions made in a vacuum – in which the government remains ignorant of the defense's theory of the case and the defense remains ignorant of the actual information at issue – are inconsistent with a reliable and fair adversary process.

Finally, the cases the government cites regarding Jencks Act and *Brady* material are inapposite. In those contexts, courts review specific materials to determine discoverability after defense counsel has had the opportunity to argue why certain categories of information should be disclosed. Here, by contrast, the defense is entirely excluded from even knowing what categories of information the government seeks to withhold, much less arguing about their discoverability.

### IV. Security Clearances and Need-to-Know Are Relevant to Whether Ex Parte Proceedings Are Necessary

The government argues that defense counsel's security clearances are "irrelevant" because counsel lack a "need to know" the classified information. Gov't Resp. at 4-5. This argument is circular. Counsels' "need to know" exists precisely because they must "determine whether to move for disclosure—again, in a classified setting—of classified yet discoverable information that is either helpful or material to a fair determination of the case." *See* Def. Mot. at 8.

The government cites Executive Order 13526 for the proposition that clearance alone does not establish need-to-know. But in a criminal prosecution, defense counsel's need to know discoverable information that bears on their client's guilt or innocence is self-evident. The government essentially argues that defense counsel cannot establish a need to know without first seeing the information, but cannot see the information without first establishing a need to know. This Catch-22 highlights exactly why the Court should exercise its discretion under Section 4 to allow cleared counsel access to these filings.

The cases the government cites—such as *United States v. Al-Farekh*, 956 F.3d 99 (2d Cir. 2020), and *United States v. Asgari*, 940 F.3d 188 (6th Cir. 2019)—are inapposite. In *Al-Farekh*, for example, the court "decline[d] to adopt" a "bright-line rule" requiring disclosure of § 4 filings to cleared defense counsel. 956 F.3d at 107. In *Asgari*, the district court had already determined that classified information was not relevant and then, after learning defense counsel had clearances, reversed course and ordered disclosure of information the court had deemed irrelevant. 940 F.3d at 191.

The defense is not arguing that a bright-line rule requires disclosure of § 4 filings in every case involving cleared defense counsel, or that a security clearance requires the government to disclose irrelevant and unhelpful material to the defense. A security clearance is a prerequisite to disclosure, but is not sufficient to require disclosure in every case. As such, these cases fail to address the question presented here: whether a district court may, in its discretion, allow cleared defense counsel to review Section 4 filings before making a discoverability determination, so that the

defense can meaningfully participate in that determination.

In criminal discovery, defense counsel's need-to-know arises when information is potentially discoverable — that is, when it may be material to guilt, punishment, or impeachment. *See Smith*, 780 F.2d at 1107 (government must disclose classified information that is "relevant and helpful" or "essential to a fair determination of a cause"). The government's Section 4 filing necessarily identifies information the government believes is not discoverable, but the defense cannot evaluate that conclusion without seeing what has been withheld. Security clearances satisfy the first requirement for access; the defense's obligation to advocate on behalf of Mr. Sharifullah establishes the need-to-know. A security clearance is thus necessary but not sufficient—the Court must still determine discoverability, but should do so with cleared defense participation rather than through an ex parte review of the government's § 4 filings alone because of the factual and legal defenses at issue in this case.

## V. Ex Parte Proceedings Remain Disfavored Even Under CIPA.

The government dismisses as irrelevant the well-established principle that ex parte proceedings are "greatly disfavored." Gov't Resp. at 3 (acknowledging the principle but arguing it does not apply). Yet this principle informed Congress's drafting of CIPA § 4, which merely "clarify[ies] the Court's powers under Federal Rule of Criminal Procedure 16(d)(1)." S. REP. 96-823, 6, 1980 U.S.C.C.A.N. 4294, 4299 (1980). While F.R.C.P. 16(d)(1) authorizes courts to "deny, restrict, or defer discovery or inspection," and "may permit a party to show good cause by a written statement

8

that the court will inspect ex parte," the Advisory Committee Notes to Rule 16 make clear that courts should "bear[] in mind that ex parte proceedings are disfavored and not to be encouraged." Fed. R. Crim. P. 16 advisory committee note (1975); *see also RZS Holdings AVV v. PDVSA Petroleo S.A.*, 506 F.3d 350, 356 (4th Cir. 2007) ("in our system of justice, ex parte judicial proceedings … are greatly disfavored").

CIPA § 4 creates an exception to this principle where necessary to protect national security, but "necessary" is context-dependent. Where, as here, cleared defense counsel can review classified materials in a secure setting without any risk to national security, the traditional disfavor toward ex parte proceedings should guide the Court's exercise of discretion.

## CONCLUSION

CIPA § 4 gives this Court discretion to determine whether § 4 proceedings should occur ex parte. The defense asks the Court to exercise that discretion by requiring disclosure of the government's § 4 filings to cleared defense counsel in a classified setting. This approach protects national security—because nothing would leave the SCIF unless and until the Court either grants the government's § 4 motion or authorizes disclosure of the information under §§ 5 and 6 — while ensuring that the Court has the benefit of adversarial advocacy when determining what classified information is discoverable to the defense.

Dated: January 6, 2026.

                                                                Respectfully Submitted,

                                                                By Counsel,

                                                                _____/s/_____
                                                               Geremy C. Kamens
                                                              Va. Bar No. 41596
                                                              Federal Public Defender
                                                              Lauren E. S. Rosen
                                                              VA Bar No: 98540
                                                              Assistant Federal Public Defender
                                                              Office of the Federal Public Defender
                                                              1650 King Street, Suite 500
                                                              Alexandria, Virginia 22314
                                                              (703) 600-0800
                                                              (703) 600-0880 (fax)
                                                              Geremy_Kamens@fd.org
                                                              Lauren_rosen@fd.org