IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:25-cr-143-AJT |
| | ) | |
| MOHAMMAD SHARIFULLAH, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

### MOTION TO QUASH SUBPOENA

The United States of America, through undersigned counsel, hereby respectfully moves pursuant to Federal Rule of Criminal Procedure 17(c)(2) to quash the defendant's subpoena commanding the appearance and testimony at trial of Jayne Howell, the Chief of Mission at the U.S. Embassy in Sri Lanka and the senior-most American diplomat in that country.

### Factual Background

*Subpoena and State Department Denial*

On March 27, 2026, the defendant served the United States Department of State with the subpoena for testimony of Jayne Howell, pursuant to *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). *See* GX-1 at 3 (subpoena). The defense request included a skeletal justification for the purported testimony, stating: "Ms. Howell will be questioned regarding her work in August 2021 in Kabul, Afghanistan. Specifically, her testimony regarding the circumstances leading up to the bombing of the Hamid Karzai International Airport on August 26, 2021, is necessary to the trial." *See* GX-1 at 1 (Cover letter to the subpoena).

1

On April 15, 2026, the State Department denied the defendant's *Touhy* request, noting, among other things, the defense's lack of compliance with State Department *Touhy* regulations set forth in 22 C.F.R. § 172.5(a) – specifically, the defense failure to "set forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought." See GX 2 at 1.  The denial letter noted that this information was needed "in order to make a determination as to whether it is appropriate to authorize the production of the requested information or testimony." *Id.* at 2.  The skeletal defense request instead provided "no additional details about the specific information you are seeking from the State Department, why you are seeking it, how you plan to use it, in what way you believe it is necessary to Ms. Sharifullah's defense, why you believe Ms. Howell would be an appropriate witness, or why you believe the requested testimony is not available from other sources."  *Id.*

Analyzing the factors set forth in 22 C.F.R. § 172.8, concerning whether the State Department could comply with a *Touhy* request, the State Department further noted additional concerns with the defense request, including among others: (1) the undue burden of forcing the senior-most U.S. diplomat to leave her station; (2) the possibility that the defense information would implicate classified information (no doubt exacerbated by the lack of specificity in the defense's request); and (3) the failure of Sharifullah to "articulate how Ms. Howell's testimony is necessary to Mr. Sharifullah's defense." *Id.* at 3-4.

The State Department letter made reference to a 179-page transcribed interview of Ms. Howell's testimony in front of the House Foreign Affairs Committee (available at GX-4) related to her time posted in Kabul with the State Department when the Abbey Gate attack occurred.

*Deficient Cure Attempt*

Perhaps recognizing the deficiencies in their original Touhy request, defense counsel responded to the State Department denial on April 15, 2026, seeking to cure the defect with additional explanation: "Ms. Howell is uniquely able to testify regarding the determination to direct State Department consular officers who had been processing evacuees on August 26, 2021, to pull back from the Abbey Gate, such that no State Department employees were harmed as a result of the attack."  GX 3 (Defense Letter on April 15, 2026).

The defense explanation continues to fall short of the explanation required by the State Department *Touhy* regulations.  However, as best the government understands it (reading this defense explanation in the context of the House Foreign Affairs Committee interview) the defense intends to elicit testimony that in the hours preceding the Abbey Gate attack, certain U.S. government personnel learned than an "attack at Abbey Gate was immediately imminent."  GX-4 at 160.  This security assessment caused Ms. Howell to "pull our consular officers back from Abbey Gate" in the hour or so before the Abbey Gate attack. *Id.*  Ms. Howell notified the military of the same, and the military had already "begun the process to close off Abbey Gate" when the attack occurred.  *Id.* at 161.

*Other Evidence Provides Same Information*

The defense has already noticed their intention to introduce the U.S. Central Command investigation report into the Abbey Gate attack, which the government has conceded is admissible via separate pleadings.  This report includes the same information – *i.e.,* that U.S. government personnel were aware of a possible attack at Abbey Gate before it happened.  The investigation report states, "On 25-26 August, [American] personnel were aware of increased credible reporting for a vehicle-borne improvised explosive device (VBIED) or suicide vest IED (SVIED) at a gate. . ."  GX-5 at 9.  And the report details that at

3

"approximately 1300 on 26 August" (*i.e.*, just a few hours before the attack), certain U.S. personnel were on alert that "a MASCAL [mass casualty] event was imminent." *Id.*

## Legal Standard

The Supreme Court has made clear that federal agencies have authority to restrict the production of government documents, as well as testimony by government employees, by federal regulation. *See Touhy*, 340 U.S. 462 (1951). "*Touhy* is part of an unbroken line of authority which directly supports [the proposition] that a federal employee may not be compelled to testify contrary to his federal employer's instructions under valid agency regulations." *Boron Oil Co. v. Downie*, 873 F.2d 67, 69 (4th Cir.1989).

The State Department has issued *Touhy* regulations pursuant to 5 U.S.C. § 301, and these regulations govern the proposed testimony of Ms. Howell. A party seeking to obtain such testimony is required to provide a written summary of the information sought and its relevance to the proceedings. *See* 22 CFR § 172.5. The defendant has failed to make these disclosures, and the State Department has accordingly not authorized the proposed testimony. Ms. Howell is thus prohibited from testifying. 22 CFR § 172.4.

As the Fourth Circuit in *United States v. Soriano-Jarquin* explained,

> Pursuant to 5 U.S.C. § 301, federal agencies may promulgate so-called Touhy regulations to govern the conditions and procedures by which their employees may testify about work-related issues at trial. . . The Supreme Court has approved such [Touhy] regulations, holding that agencies may legitimately promulgate regulations governing employee testimony and may, pursuant to those regulations, forbid an employee to testify in a court proceeding.

492 F.3d 495, 504 (4th Cir. 2007). The Fourth Circuit's decision in *Soriano-Jarquin* is particularly instructive. That case involved a federal criminal prosecution in which the defendant sought to call an U.S. Immigration and Customs Enforcement ("ICE") Special Agent as a

4

witness.  The defendant failed to comply with DHS' *Touhy* regulations, and the District Court granted the government's motion to exclude the testimony.  The Fourth Circuit affirmed the District Court's decision, concluding that the *Touhy* Regulations applied to cases in which the United States was a party, and further holding that the defendant's failure to comply with DHS' *Touhy* Regulations provided a proper basis for preventing the defendant from calling the ICE agent as a witness.  *Id.* at 504-05.

Compounding the issue, the defendant in *Soriano–Jarquin* failed to demonstrate that the agent's possible testimony would be both material and favorable, providing an independent reason to quash the subpoena.  492 F.3d at 504-05.  As the Supreme Court has explained, "the Sixth Amendment does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses."  *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982).  Instead, a defendant's right to compel the appearance of a witness is dependent on the defendant plausibly demonstrating that the requested testimony is "both material and favorable to his defense."  *Id.*; *see also United States v. Galecki*, 932 F.3d 176, 182 (4th Cir. 2019) ("[A] criminal defendant must at least make some plausible showing of how [the excluded] testimony would have been both material and favorable to his defense.") (internal quotation marks omitted); *United States v. Ritchie*, 734 F. App'x 876, 879 (4th Cir. 2018) ("[T]he Defendants' compulsory process right extends only to 'favorable' and 'material' witnesses and evidence."). The Fourth Circuit has explained that in this context, an assessment of whether requested testimony by a defendant is in fact material "has several components: it must be exculpatory; it must be 'not merely cumulative to the testimony of available witnesses;' it must present 'a reasonable likelihood that the testimony could have affected the judgment of the trier of fact;' and it must be

otherwise admissible." *Galecki*, 932 F.3d at 186 (quoting *Valenzuela-Bernal*, 458 U.S. at 873-74). A defendant may not use Rule 17 process for the purpose of conducting a "fishing exercise." *United States v. Nixon*, 418 U.S. 683, 699-700 (1974).

**<u>Argument</u>**

The Court should quash the subpoena for several independent reasons.

*First*, the defendant failed to comply with the State Department's *Touhy* regulations by "set[ting] forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought." 22 C.F.R. § 172.5(a). His failure to "comply with [the] Touhy regulations" alone warrants quashing the subpoena. *See Soriano-Jarquin*, 492 F.3d at 504.

*Second*, even assuming the defense identified with specificity the testimony they wished to elicit (and they have not done so here), such testimony is duplicative of other admissible evidence. The defense noted that they wish to call Ms. Howell to discuss the information that led her to pull State Department consular employees back from Abbey Gate before the attack. Ms. Howell testified in front of the House Foreign Affairs Committee that she received briefings before the attack about the risk around Abbey Gate and eventually, "the tenor of the briefings had changed" and Ms. Howell believed an "attack was imminent." GX-4 at 160. This same information is already captured in the CENTCOM report, which noted that certain U.S. government components knew of an "imminent" "MASCAL event" as early as "1300 on 26 August" and "were aware of increased credible reporting" for attacks. GX-5 at 9. At best, Ms. Howell's testimony is cumulative. It opens no new areas of cross examination not already available. *See United States v. Weisman*, 858 F.2d 389, 392 (8th Cir. 1988) ("The record sufficiently supports the District Court's denial of Weisman's

request for subpoenaing the two witnesses, because their testimony would have been repetitive and cumulative."); *Roussell v. Jeane*, 842 F.2d 1512, 1516 (5th Cir. 1988) ("[T]he right to call a witness is not absolute . . . For example, a defendant is not entitled to burden the proceedings with cumulative testimony.").   For similar reasons, the exclusion of such testimony is unlikely to have any effect on the judgment of the trier of fact as the same evidence can be offered through the CENTCOM report at minimum.

*Third*, whether or not U.S. government personnel believed there to be risk of imminent attack in advance of the Abbey Gate attack does not bear on the defendant's culpability or any element of the charged crime.  It certainly does not tend to exculpate the defendant under any conceivable theory of the case cognizable to the government.  The defense must clearly lay out exactly what testimony they will elicit *and* why it is exculpatory. And the defense must articulate some plausible basis (beyond mere speculation) for believing Ms. Howell's testimony would be helpful to his defense.  *United States v. Rivera*, 412 F.3d 562, 570 (4th Cir. 2005) ("[A defendant does not have a] Sixth Amendment right to conduct an exploratory foray based on mere speculation.").  He simply has not done so here.

*Finally*, to the extent the defendant intends to call Ms. Howell for the purpose of delving into discussions about what she was told about the security posture in and around Abbey Gate before the attack, such testimony would almost certainly be inadmissible hearsay,  Fed. R. Evid. 801-802, and potentially also be classified.

## **Conclusion**

Therefore, for the above-stated reasons, the United States asks the Court to quash the aforementioned subpoena issued to Jayne Howell.

Respectfully submitted,

TODD W. BLANCHE
Acting Attorney General

_____/s/_____
Avi Panth
Virginia Bar Number 92450
John T. Gibbs
Virginia Bar Number 40380
Reed Sawyers
D.C. Bar Number 90018498
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3982
Avishek.Panth@usdoj.gov

JOHN A. EISENBERG
Assistant Attorney General for National Security

Ryan D. White
D.C. Bar Number 1655918
Trial Attorney
Counterterrorism Section
National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington D.C. 20530
Phone: (202) 514-0849
Fax: (202) 514-8714
Ryan.White@usdoj.gov