IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:25-CR-143 |
| | ) | |
| MOHAMMAD SHARIFULLAH | ) | |
| | ) | |
| Defendant. | ) | |

## SUPPLEMENT TO MOTION TO COMPEL

Mr. Mohammad Sharifullah was seized in Pakistan in February 2025 and transferred to the United States without meaningful investigation of the charges now lodged against him. His family was detained at the same time, and as far as we know, they remain detained to the present day. Yet the government has refused to produce any information regarding the role— whatever it may be—played by United States officials and agencies in directing, facilitating, or otherwise participating in that seizure. This Court should compel that disclosure.

The stakes are high. If the United States coordinated, directed, or participated in the Pakistani seizure of Mr. Sharifullah or his family members, the constitutional protections that govern U.S. law enforcement conduct apply in full. It would directly impact the legality of Mr. Sharifullah's subsequent interrogation by the FBI. *See Missouri v. Seibert*, 542 U.S. 600, 611 (2004). U.S. involvement in Mr. Sharifullah and his family's seizure by Pakistani authorities also directly implicates the resolution of Mr. Sharifullah's Motion for Outrageous Government Misconduct.

Since the original briefing, newly produced discovery has only deepened the evidence of U.S. involvement. A letter that was only provided yesterday reflects that the FBI thanked Pakistani officials for their "unprecedented joint efforts" in transferring Mr. Sharifullah's custody to the United States. A separate FBI memorandum, dated September 2, 2025, reflects FBI knowledge that Mr. Sharifullah's wife was in the custody of a Pakistani intelligence agency—the identifying acronym redacted—even as government counsel has suggested that she and Mr. Sharifullah's children are detained in immigration custody. Taken together with the evidence set out below, these disclosures confirm what the existing record strongly suggests: this was a joint venture between the United States and Pakistan, and the defense is entitled to know its full dimensions.

## ARGUMENT

### I.    THE JOINT VENTURE DOCTRINE REQUIRES DISCLOSURE OF UNITED STATES INVOLVEMENT IN THE PAKISTANI SEIZURE.

When U.S. officials "actively" or "substantially" participate in a foreign investigation or seizure, that conduct is subject to the constitutional limitations applicable to domestic law enforcement. *United States v. Abu Ali*, 528 F.3d 210, 228–29 (4th Cir. 2008). The Fourth Circuit has articulated the standard precisely: "[c]oordination and direction of an investigation or interrogation" by the United States constitutes the 'active' or 'substantial' participation necessary for a 'joint venture.'" *Id.* at 229. The Ninth Circuit, similarly, has held that alerting foreign authorities of possible criminal activity, coordinating surveillance, and giving the signal to instigate a seizure are all sufficient to establish a joint venture. *United*

2

*States v. Emery*, 591 F.2d 1266, 1268 (9th Cir. 1978). The Fourth Circuit cited the Ninth Circuit's decision in *Emery* approvingly in *Abu Ali*.

## II.  NEWLY PRODUCED EVIDENCE FURTHER CONFIRMS SUBSTANTIAL U.S. INVOLVEMENT IN THE SEIZURE OF MR. SHARIFULLAH AND HIS FAMILY.

The existing record already reflects substantial indicia of a U.S.-Pakistan joint venture. The lead case agent memorialized that "in early 2025, [redacted] helped the [redacted] and Pakistan jointly locate and arrest" Mr. Sharifullah. Senator Deb Fischer publicly stated in 2025 that "Pakistani authorities acted on Central Intelligence Agency (CIA) information to detain Sharifullah in their country."

Furthermore, President Trump, in his address to a Joint Session of Congress on March 4, 2025, announced: "America is once again standing strong against the forces of radical Islamic terrorism. . . . Tonight I am pleased to announce that we have just apprehended the top terrorist responsible for that atrocity, and he is right now on his way here to face the swift sword of American justice. And I want to thank, especially, the Government of Pakistan for helping arrest this monster."[1]

That statement—made in real time as Mr. Sharifullah was in transit—is not merely rhetoric. It describes a coordinated operation between two governments, with the United States as the driving force. It is implausible that Mr. Sharifullah happened to fall into U.S. hands just in time for President Trump's March 4, 2025, speech, without substantial U.S. orchestration and coordination.

---

[1] Available at: https://www.presidency.ucsb.edu/documents/address-before-joint-session-the-congress-4.

3

Speeches made to a joint session of Congress, with members of the Supreme Court in attendance, are not prepared at the last moment. The inclusion of information about Mr. Sharifullah's apprehension in the speech is itself an indication that U.S. involvement was deliberately, and hastily, orchestrated for use as a political talking point in the weeks after President Trump took office on January 20, 2025. The speed with which Mr. Sharifullah was apprehended would explain why the actual evidence linking him to the Abbey Gate bombing, aside from confessions that began when he was in Pakistan's custody, is so thin. Yet the government has produced absolutely no communications from the United States in January or February 2025 that relate to Mr. Sharifullah's seizure in Pakistan.



Finally, the fact that Pakistani officials in October 2025 asked an FBI agent in Pakistan if they could release Mr. Sharifullah's wife if he pleaded guilty, because they were "apparently tire[d] of babysitting" — and the agent responded that they "could" "after the court proceedings were finalized" — all support that this was an operation done at the behest of the United States. Why else would Pakistan ask the United States whether it could release people—including four small children—in its custody?

The new discovery materials now before the Court reinforce this picture in two important respects.

First, the FBI's own letter to Pakistani officials provided yesterday thanks their service for the "unprecedented joint efforts to transfer custody of Mohammad Sharifullah." That characterization forecloses any argument that this was a unilateral Pakistani operation to which the United States was a passive bystander. An "unprecedented joint effort" to transfer custody strongly implies the kind of active, coordinated participation that the Fourth Circuit in *Abu Ali* recognized as sufficient to trigger the joint venture doctrine.

Second, an FBI memorandum dated September 2, 2025, reflects that the FBI was aware that Mr. Sharifullah's wife was being held in the custody of a Pakistani intelligence service, the acronym of which has been redacted. The detention of a defendant's family members as leverage is a recognized coercive tactic, and U.S. knowledge of that detention—which at least one U.S. official encouraged to continue until Mr. Sharifullah pleaded guilty—raises profound questions about the

government's role. Yet the government continues to withhold information about U.S. involvement in the initial seizure of Mr. Sharifullah and his family.

## III.   THE GOVERNMENT'S CONTINUED WITHHOLDING OF THIS EVIDENCE IS UNJUSTIFIED.

Mr. Sharifullah is not identified as involved in the Abbey Gate bombing in any of the declassified intelligence summaries the government has produced. There is no electronic surveillance linking him to that attack. There are no conspirators who identify him as being involved in the attack. There are no surveillance pictures of him being involved in the attack. There is not even any ISIS-K media announcement linking him to the attack.

These facts, combined with the speed of his arrest and transfer and the President's announcement to a Joint Session of Congress before Mr. Sharifullah had even arrived on American soil, raises serious questions about the adequacy of the investigation that preceded his prosecution. The defense has a constitutional right to investigate those questions and to present any resulting evidence in his defense.

The government cannot shield the full scope of its involvement behind a blanket refusal to disclose. To the extent particular materials are subject to claims of privilege or classification, the Court has well-established tools to address those claims that have already been employed in this case. What the government may not do is simply decline to produce relevant evidence of its own role that is central to pending motions before the Court.

## CONCLUSION

For the foregoing reasons, and for the reasons set out in Mr. Sharifullah's

original motion and memorandum, this Court should direct the government to produce all information, involving any U.S. agency, relating to U.S. involvement in the identification, location, and seizure of Mr. Sharifullah and his family members in Pakistan in February 2025. That production should include, at minimum: (1) all communications between U.S. agencies and Pakistani counterparts relating to the location, surveillance, arrest, detention, or transfer of Mr. Sharifullah and his family; (2) all records reflecting CIA, FBI, or other agency involvement in the planning or execution of the seizure; (3) all records reflecting U.S. knowledge of, or involvement in, the detention of Mr. Sharifullah's wife or other family members; and (4) all records relating to the decision to transfer Mr. Sharifullah to the United States and the involvement of senior U.S. officials in that decision. To the extent the government claims any such materials are classified, Mr. Sharifullah respectfully requests that the Court order their production subject to CIPA's procedures and such protective orders as may be appropriate.

Dated: April 17, 2026.

Respectfully Submitted,

By Counsel,

_____/s/_____
Geremy C. Kamens
Va. Bar No. 41596
Federal Public Defender
Lauren E. S. Rosen
VA Bar No: 98540
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314

7

(703) 600-0800
(703) 600-0880 (fax)
Lauren_Rosen@fd.org
Geremy_Kamens@fd.org