IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA    )
                            )
v.                          )        Case No. 1:25-cr-143
                            )        The Honorable Anthony J. Trenga
MOHAMMAD SHARIFULLAH,       )
                            )
        Defendant           )

## MOHAMMAD SHARIFULLAH'S MOTION FOR JUDGMENT OF ACQUITTAL

Mohammad Sharifullah, by counsel, respectfully moves this Court pursuant to Federal Rule of Criminal Procedure 29(a) for a judgment of acquittal on Count One of the Indictment, which charges Conspiracy to Provide Material Support to a Designated Foreign Terrorist Organization Resulting in Death, in violation of 18 U.S.C. § 2339B. The government has failed to present sufficient evidence to sustain a conviction on three independent grounds.

First, there is no evidence that any conspiracy to provide material support that Mr. Sharifullah participated in constituted an actual cause of any death at Abbey Gate on August 26, 2021. *See Burrage v. United States*, 571 U.S. 204, 211 (2014). Consequently, the Court should strike the death-resulting element and corresponding enhanced statutory penalty in this case.

Second, the government's entire case rests on Mr. Sharifullah's confessions. No photographs, no coconspirator testimony, no electronic communications, no cell-site location data, and no physical evidence corroborate his statements of involvement in the disparate attacks alleged in the indictment or in the others contained in his

statements and admitted at trial. Under the long-settled rule that a conviction cannot rest solely on an uncorroborated confession, the government's failure to produce any substantial independent evidence linking Mr. Sharifullah to any of the alleged attacks requires a judgment of acquittal on the charged offense as a matter of law.

Third, the government charged Mr. Sharifullah with a single, overarching conspiracy spanning from approximately 2016 through March 2025—nearly a decade—encompassing geographically and temporally distinct attacks committed by different participants, all drawn from Mr. Sharfullah's statements:

- 2016-6-20 Nepalese contractor attack

- 2017-7-31 Iraqi embassy
- 2017-12-25 NDS attack

- 2019-5-30 Marshal Fahim University Attack

- 2021-08-26 HKIA

- 2022-4-18 Uzbek rocket attack – any role
- 2022-12-26 Badakhshan Taliban Police Chief

- 2023-6-6 Badakhshan Taliban Deputy Governor

- 2024-03-23 Crocus Hall attack

But of these attacks, the government has adduced evidence from witnesses who have personal knowledge of only two attacks — the attack on the Nepalese contractors and the Abbey Gate attack. Outside of Mr. Sharifullah's statements, none of the other attacks are supported by evidence other than public statements taking responsibility by ISIS-K. As such, the Court should measure whether the government has established evidence of a single overarching conspiracy solely against the two

2

attacks for which competent evidence of their actual occurrence has been admitted, the Nepalese contractor attack and the Abbey Gate attack.

Even if there was corroboration of Mr. Sharifullah's statements, the evidence at trial established at most a series of disconnected episodes rather than a single, unified conspiratorial agreement. These attacks over a lengthy period of time, one in a completely different country, purportedly involved different attackers, through different methods, and with no demonstrated common aim uniting Mr. Sharifullah's alleged role in each. The only reason that these attacks appear to have a common link is because the only evidence of how they were committed comes from Mr. Sharifullah's statements, and there is no other independent evidence corroborating his accounts. Where the proof shows multiple conspiracies rather than the single conspiracy charged, the indictment fails for a fatal variance and conviction cannot stand.

### Argument

The Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). A Rule 29 motion tests whether the government has met its burden to present evidence that, with all conflicting inferences resolved in favor of the prosecution, would allow a rational jury to "reach a subjective state of near certitude of the guilt of the accused." *Jackson v. Virginia*, 443 U.S. 307, 315 (1979). Sufficiency is measured by whether substantial evidence supports the conclusion that a rational jury could find the defendant guilty beyond a reasonable doubt "of every fact necessary to constitute the

3

crime[s] with which he is charged." *Id.* at 315, 319 & n.12 (1979); *see also McDaniel v. Brown*, 558 U.S. 120, 131 n.4 (2010); *United States v. Blue*, 808 F.3d 226, 236 (4th Cir. 2015).

"While all inferences must be made in favor of the prosecution, leaps of logic should not be." *Evans-Smith v. Taylor*, 19 F.3d 899, 908 n.22 (4th Cir. 1994). Likewise, "[f]avoring the prosecution with all inferences does not mean that [the Court] must ignore evidence that is in the record" that is inconsistent with guilt. *Id.* at 910 n.29. If all of the evidence taken together would not permit a rational jury to have certainty as to the defendant's guilt as to any essential element, the motion must be granted.

Moreover, a mere preponderance of evidence supporting a finding of guilt — evidence that only makes it more likely than not that the defendant is guilty — is not sufficient to survive a Rule 29 motion for judgment of acquittal. *In re Winship*, 397 U.S. 358, 365 (1970); *Cty. Ct. of Ulster Cty., N. Y. v. Allen*, 442 U.S. 140, 166 (1979) (noting that beyond a reasonable doubt is a "more stringent test" than a preponderance of evidence). Put differently, "if the evidence viewed in the light most favorable to the prosecution gives 'equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence,' then 'a reasonable jury must necessarily entertain a reasonable doubt.'" *United States v. Glenn*, 312 F.3d 58, 70 (2d Cir. 2002) (citations omitted); *United States v. Lopez-Diaz*, 794 F.3d 106, 111 (1st Cir. 2015) (a "reasonable jury must necessarily entertain a reasonable doubt" if the evidence "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of

4

innocence of the crime charged"); *Cosby v. Jones*, 682 F.2d 1373, 1379 (11th Cir. 1982) (if evidence establishes only "that the defendant is more likely than not guilty then the evidence is not sufficient for conviction").

## I.    The Government Has Failed to Present Sufficient Evidence that Any Death at Abbey Gate Resulted from the Charged Conspiracy.

Under Rule 29, the Court must enter a judgment of acquittal on any count or sentencing enhancement for which the evidence is insufficient to sustain a conviction. Fed. R. Crim. P. 29(a). Where, as here, the Government seeks to impose the "death results" penalty enhancement under 18 U.S.C. § 2339B, it must prove beyond a reasonable doubt that the charged conspiracy actually caused the death of a person. The evidence at trial is insufficient to meet that burden.

### A. The "Death Results" Enhancement Requires Proof of But-For Causation.

The penalty provision of § 2339B provides that if "the death of any person results" from a violation of the statute, the defendant may be sentenced to any term of years up to life imprisonment. 18 U.S.C. § 2339B(a)(1). This language imposes a standard of actual causation. As the Supreme Court held in *Burrage v. United States*, 571 U.S. 204, 210 (2014), the phrase "'results from' imposes … a requirement of actual causality." In the ordinary case, this demands proof "that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct." *Id.* (citations omitted). Although *Burrage* itself arose in the context of the drug-distribution death-results enhancement in 21 U.S.C. § 841(b)(1)(C), its reasoning as to actual causation applies with full force here.  As the government argued in the context of the briefing

5

over whether proximate causation applied, the phrase "results" is a standard causation term, and there is no basis to read it less broadly in § 2339B than in § 841. *See Burrage*, 571 U.S. at 210–11 (relying on the "ordinary meaning" of "results from" as a background principle of statutory construction).

18 U.S.C. § 2339B prohibits the knowing provision of material support to a designated foreign terrorist group. § 2339B; *United States v. Dhirane*, 896 F.3d 295, 303 (4th Cir. 2018) (to establish a § 2339B violation, government must prove defendant knowingly provided or attempted or conspired to provide material support). The scouting of a route, a highway called Airport Road on the south side of Hamid Karzai International Airport on August 26, 2021, is the only support the government has adduced that Mr. Sharifullah knew about. Indeed, the government has adduced no evidence that Mr. Sharifullah's purported conspiracy was in any way linked to the individuals who actually committed the Abbey Gate attack. Accordingly, application of the heightened penalty depends entirely on evidence of a causal chain running from Mr. Sharifullah's alleged conspiracy to scout a road to the Abbey Gate bombing to the resulting deaths—a chain that the evidence does not establish.

## B. There Is No Evidence That Mr. Sharifullah's Alleged Conspiracy to Provide Material Support Caused Any Death at Abbey Gate.

The government claims that Mr. Sharifullah conspired to provide material support to ISIS-K by, among other things, scouting a road adjacent to the Hamid Karzai International Airport called, appropriately, Airport Road, near the main entrance to the airport. But no evidence at trial establishes that the bomber used that road after it was supposedly scouted, or used any information supposedly supplied by

Mr. Sharifullah. Nor is there any evidence that Mr. Sharifullah was part of the actual plot that resulted in the bombing itself. Without evidence of any link between Mr. Sharifullah and the actual plot that resulted in the Abbey Gate bombing, the causal chain is broken, and the death-resulting statutory range cannot be imposed.

But-for causation requires the government to prove, beyond a reasonable doubt, that the deaths at Abbey Gate would not have occurred in the absence of Mr. Sharifullah's alleged conspiracy to scout Airport Road near the HKIA South Gate. *Burrage*, 571 U.S. at 210. That means the Government must show not merely that a bombing occurred, and not merely that Mr. Sharifullah provided some form of support to the organization responsible, but that his specific conspiracy to provide his material support was a necessary condition of those specific deaths.

The Government has presented no such evidence. There is no testimony and no other proof that the bomber followed the route Mr. Sharifullah is alleged to have identified. Indeed, there is no evidence that the bomber had any knowledge of, or connection to, Mr. Sharifullah's alleged scouting activities at all. Nor is there any evidence that Mr. Sharifullah was working with anyone who was somehow linked to the people who actually committed the bombing of Abbey Gate.

This is not a gap that the jury may fill with inference or speculation. The but-for standard demands proof, not conjecture. *See Victor v. Nebraska*, 511 U.S. 1, 20 (1994) (affirming instruction that distinguished reasonable doubt from "doubt arising from mere possibility, from bare imagination, or from fanciful conjecture"); *Pennsylvania R. Co. v. Chamberlain*, 288 U.S. 333, 344 (1933) (verdict cannot rest on

"mere speculation and conjecture"); *Moore v. United States*, 271 F.2d 564, 568 (4th Cir. 1959) ("evidence creating a mere probability of guilt or giving rise to a mere suspicion or conjecture of guilt is not sufficient"). Where, as here, there is simply no evidence connecting the defendant's charged conspiracy to the mechanism of harm, the death-resulting statutory penalty cannot apply.

### C. The Insufficiency of the Causal Evidence Requires Acquittal on the Death-Results Element.

Because the Government has failed to present evidence sufficient to establish but-for causation between the charged conspiracy and the deaths at Abbey Gate, no rational trier of fact could find the "death results" enhancement proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The Court should accordingly enter a judgment of acquittal as to the death-results penalty under 18 U.S.C. § 2339B(a)(1).

### II.    The Evidence Is Insufficient To Sustain A Conviction Because Mr. Sharifullah's Confession Is Entirely Uncorroborated.

### A. A Conviction Cannot Rest on an Uncorroborated Confession.

"It is a settled principle of the administration of criminal justice in the federal courts that a conviction must rest upon firmer ground than the uncorroborated admission or confession of the accused." *United States v. Abu Ali*, 528 F.3d 210, 234 (4th Cir. 2008) (quoting *Wong Sun v. United States*, 371 U.S. 471, 488–89 (1963)); *see also United States v. Stephens*, 482 F.3d 669, 672 (4th Cir. 2007); *United States v. Rodriguez-Soriano*, 931 F.3d 281, 287 (4th Cir. 2019). A criminal defendant's

conviction cannot rest entirely on an uncorroborated extrajudicial confession. *Stephens*, 482 F.3d at 672.

The corroboration requirement "is rooted in 'a long history of judicial experience with confessions and in the realization that sound law enforcement requires police investigations which extend beyond the words of the accused.'" *Rodriguez-Soriano*, 931 F.3d at 287 (quoting *Wong Sun*, 371 U.S. at 489). Courts require corroboration to "prevent confessions to crimes never committed and convictions based upon untrue confessions alone." *Abu Ali*, 528 F.3d at 234. "There can be no conviction of an accused in a criminal case upon an uncorroborated confession," where the corroboration "wholly fails to include any substantial evidence of the corpus delicti." *Rodriguez-Soriano*, 931 F.3d at 287 (citing *Yost v. United States*, 157 F.2d 147, 150 (4th Cir. 1946)).

"Independent evidence adequately corroborates a confession if it 'supports the essential facts admitted sufficiently to justify a jury inference of their truth;'" and "[t]he facts admitted plus the other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt." *Abu Ali*, 528 F.3d at 235 (citing *Opper v. United States*, 348 U.S. 84, 93 (1954)). The corroborative evidence does not have to prove the offense beyond a reasonable doubt, or even by a preponderance— but "there must be substantial independent evidence that the offense has been committed in the first instance." *Id.* Only after a defendant's admissions have been corroborated by sufficient independent evidence may the government "prove the offense through the statement of the accused." *Id.*

9

Critically, the government cannot rely on a second uncorroborated confession as independent evidence corroborating an initial one. *Rodriguez-Soriano*, 931 F.3d at 290. "Where the only evidence of the corpus delicti is an uncorroborated confession, the evidence is insufficient to support a conviction as a matter of law." Id.

### B. The Government's Evidence Consists Entirely of Mr. Sharifullah's Own Statements.

The government's admitted evidence establishes: (1) that certain terrorist attacks occurred, including against Nepalese embassy guards in Kabul on June 20, 2016, at HKIA on August 26, 2021; and at Crocus City Hall in Russia on March 22, 2024; (2) that ISIS-K affiliated media claimed responsibility for those attacks; (3) that Mr. Sharifullah is a member of ISIS-K; (4) that Mr. Sharifullah confessed to his involvement in the attacks; and (5) that no other evidence connects Mr. Sharifullah to any attack—no photographs placing him at or near any attack site, no coconspirator testimony identifying him as a participant, no emails or text messages implying involvement, and no cell-phone or location data placing him at or near any of the attacks.

Items (1) and (2) establish only that terrorist attacks occurred and that ISIS-K claimed credit—they say nothing about Mr. Sharifullah's involvement. Item (3) establishes only his membership in ISIS-K—not participation in any specific attack.

10

Item (4) is his confession. Item (5) is the critical admission: the only evidence connecting Mr. Sharifullah to the charged attacks is his own words.[1]

This is precisely the situation the corroboration rule exists to address. The Fourth Circuit in *Rodriguez-Soriano* reversed a conviction where "the government presented no evidence other than Rodriguez-Soriano's uncorroborated confession" that he had made a straw purchase of firearms. 931 F.3d at 287. The court held that "[t]here is no corroboration demonstrating that the transaction was a straw purchase, and accordingly no substantial independent evidence that, together with the confession itself, proves Rodriguez-Soriano's guilt beyond a reasonable doubt." *Id.* at 288. Exactly the same is true here: there is no corroboration demonstrating that Mr. Sharifullah participated in any attack, and accordingly no substantial independent evidence that, together with his confession, proves his guilt beyond a reasonable doubt.

The Fourth Circuit's decision in *Stephens* is equally instructive. There, the defendant confessed to firing a gun at a drug dealer who had fronted him cocaine. An ATF agent corroborated peripheral details—a drug dealer with the street name provided by the defendant did operate in the area and did drive a white Mazda. 482

---

[1] Mere membership in ISIS-K, alone, is not sufficient to support a criminal conviction. *See Keyishian v. Bd. of Regents of Univ. of State of N.Y.*, 385 U.S. 589, 607 (1967) ("[M]ere Party membership, even with knowledge of the Party's unlawful goals, cannot suffice to justify criminal punishment[.]"); *United States v. Taleb-Jedi*, 566 F. Supp. 2d 157, 175 (E.D.N.Y. 2008) (noting that "§ 2339B prohibits the *conduct* of providing material support" and "does not prohibit mere membership"); § 2339B(h) (defining provision of personnel to require "work" under direction, or organization, management, supervision, or direction).

11

F.3d at 673. Yet the court reversed, holding that "the corroboration of these details does not establish the necessary link between Stephens and [the drug dealer] to prove that those two were engaged in a conspiracy to sell cocaine." *Id.* The agent—"familiar with the drug trade in the City of Roanoke, and [who] knew that Red was a suspected narcotics trafficker in the City of Roanoke"—could locate "[n]othing other than Mr. Stephens' statement" connecting the two. *Id.*

Here, the government's evidence is materially weaker than the evidence found insufficient in *Stephens*. In *Stephens*, there was at least independent corroboration of peripheral details from the confession—the existence of the drug dealer, his nickname, and the make and color of his car. Here, the government has no independent evidence whatsoever corroborating Mr. Sharifullah's role in any of the three attacks. No witness places him at a surveillance location. No communication intercept captures him reporting to ISIS-K. No photograph shows him transporting a bomber. No electronic record shows him providing a training video. Nothing has been adduced that corroborates Mr. Sharifullah's statements describing his participation in ISIS-K attacks.

## C. Proof That Attacks Occurred and That ISIS-K Claimed Credit Does Not Corroborate Mr. Sharifullah's Personal Involvement.

The government has argued that the occurrence of the attacks along with ISIS-K's claims of responsibility constitutes independent corroboration. It does not. The corroboration rule requires independent evidence of the defendant's participation in the crime, not merely evidence that a crime occurred. The Fourth Circuit has made clear that the independent evidence must "support the essential facts admitted

sufficiently to justify a jury inference of their truth." *Stephens*, 482 F.3d at 672 (quoting *Opper*, 348 U.S. at 93). Evidence that attacks occurred corroborates only that ISIS-K operatives carried out bombings and shootings—facts Mr. Sharifullah did not need to confess to because they were publicly documented events. It does not corroborate the "essential fact" of his confession: that he personally participated as a scout, transporter, or trainer in any of those attacks.

Similarly, evidence that Mr. Sharifullah is a member of ISIS-K does not corroborate his involvement in any specific attack. Membership in an organization is not the same as participation in a particular conspiracy. To allow general organizational membership to serve as corroboration for a specific offense would be to gut the corroboration rule entirely: the government could convict any member of a designated terrorist organization of any attack that organization claimed, so long as the member confessed. That is not the law. As the Fourth Circuit emphasized in *Rodriguez-Soriano*, the government must establish "substantial independent evidence that *the offense has been committed in the first instance*, and that *the evidence as a whole proves beyond a reasonable doubt that the defendant is guilty*"— i.e., that this defendant committed this crime. 931 F.3d at 288 (emphasis added).

The government also cannot bootstrap corroboration by pointing to evidence that "fortifies" the confession's credibility without also establishing the corpus delicti. In *Rodriguez-Soriano*, the government argued that the defendant's inconsistent statements to agents—his false account of the purchase and his later recantation— corroborated the confession. The Fourth Circuit rejected this argument because all of

13

the purported corroborating evidence "arises from his own statements to law enforcement." 931 F.3d at 290. The government cannot use the defendant's own words—however many times repeated or internally consistent—as independent corroboration of those same words. *Id.*

Here, the entirety of the evidence connecting Mr. Sharifullah to the charged attacks comes from his own statements. The government has not identified a single piece of evidence external to his confession that would "fortif[y] the truth of the confession" with respect to his personal involvement. *Wong Sun*, 371 U.S. at 489. Without such corroboration, the prosecution has failed to present sufficient independent evidence that Mr. Sharifullah committed the charged crime, and the evidence as a whole cannot sustain a conviction beyond a reasonable doubt.

### D. The Particular Risks of False Confessions Are Especially Acute in a Case of This Nature.

The corroboration requirement reflects the recognition that "the doubt persists that the zeal of the agencies of prosecution to protect the peace . . . or the aberration or weakness of the accused under the strain of suspicion may tinge or warp the facts of the confession." *Rodriguez-Soriano*, 931 F.3d at 287 (quoting *Wong Sun*, 371 U.S. at 489). The need for that protection is especially acute here. Mr. Sharifullah is an Afghan national alleged to be a member of a designated terrorist organization. He confessed while in custody after being detained along with his family by Pakistan's ISI, which is known to torture detainees. Moreover, Mr. Sharifullah's family was at all times in ISI custody during his interrogation by FBI agents. The pressures bearing on a confession in this context—when by all accounts Mr. Sharifullah was desperate

14

for the FBI to remove him and his family from ISI custody—are precisely the sort that the corroboration rule was designed to guard against.

Courts require corroboration to "prevent confessions to crimes never committed and convictions based upon untrue confessions alone." *Abu Ali*, 528 F.3d at 234. Where, as here, the "confessions or admissions constitute[] the only evidence linking [a defendant] to criminal conduct," the corroboration rule's purpose demands that the government be held to its obligation to produce independent evidence. *Rodriguez-Soriano*, 931 F.3d at 290. The government failed to do so. The motion for judgment of acquittal must be granted.

### III. The Evidence Established Multiple Conspiracies, Not The Single Overarching Conspiracy Charged In The Indictment.

#### A. A Fatal Variance Exists When the Government Charges One Conspiracy but Proves Several.

The government charged Mr. Sharifullah in a single count with conspiring, from "in or about 2016" through "in or about March 2025," to provide material support to ISIS-K resulting in death. Indictment, Count One (ECF No. 18). That single count sweeps together alleged conduct related to distinct attacks across a nine-year span. The law is clear: charging a single conspiracy when the evidence proves only multiple unrelated conspiracies constitutes a fatal variance requiring acquittal.

The government cannot use multiple conspiracies as evidence to support an indictment for a single conspiracy; the evidence at trial may not vary impermissibly from the allegations of the indictment. *Kotteakos v. United States*, 328 U.S. 750 (1946). A defendant may establish a fatal variance "when the evidence at trial

15

establishes facts materially different from those alleged in the indictment." *United States v. Kennedy*, 32 F.3d 876, 883 (4th Cir. 1994). The failure to prove the existence of a single conspiracy, as opposed to multiple smaller conspiracies, may be viewed as a failure to prove an essential element of the crime of conspiracy. *United States v. McLean*, 1998 WL 879497, at *3 (4th Cir. Dec. 17, 1998).

Single conspiracies are distinguishable from separable independent conspiracies "based on the overlap in actors, methods, and goals." *United States v. Young*, 989 F.3d 253, 263 (4th Cir. 2021) (citation omitted). But the common aim cannot be defined by the crime of material support. It is not enough to establish a single conspiracy if the only thing linking the conspirators' alleged conduct "was the law they were breaking." *United States v. Goss*, 329 F.2d 180, 183 (4th Cir. 1964). Even if a single individual participates in multiple criminal episodes, the government may not "string together, for common trial, eight or more separate and distinct crimes, conspiracies related in kind though they might be, when the only nexus among them lies in the fact that one man participated in all." *Kotteakos*, 328 U.S. at 773 (quoted in *McLean*, 1998 WL 879497, at *5).

## B. The Evidence Admitted of Attacks Are Too Geographically, Temporally, and Operationally Distinct to Constitute a Single Conspiracy.

The government has adduced evidence from people with personal knowledge, pursuant to Federal Rule of Evidence 602, that two attacks occurred: an attack on Nepali contractors on a bus in Kabul, Afghanistan, on June 20, 2016, and another attack near the Abbey Gate at the Hamid Karzai International Airport on August 26,

16

2021. Accordingly, the Court should evaluate the government's claim of an overall conspiracy based solely on those two attacks.

These attacks, committed five years apart, have no commonality apart from Mr. Sharifullah's alleged involvement and the fact that each attack was attributed to ISIS-K. That is not sufficient. Reviewed against the governing legal standard, the government's evidence reveals two separate conspiratorial episodes—each differently timed, differently located, differently staffed, and differently executed. Mr. Sharifullah's alleged role was to conduct surveillance and transport the bomber to another person who then transported the bomber to the target area for the Nepalese attack. After the attack, no further connection to the other charged attack is alleged.

Five years later—and after the defendant spent approximately two years in an Afghan prison, he purportedly was tasked with scouting a route near the Hamid Karzai international airport. There is no evidence that he interacted with the suicide bomber involved in the attack in connection with the plot, or that he had any advance knowledge of the operation other than that he was to scout a route. Nor is there any evidence, as noted above, of a connection between his supposed plot and the actual operation that resulted in the bombing. Nor is there a connection between the actors involved in the Nepalese bombing and the conspiracy five years later after Mr. Sharifullah had spent two years in prison. The ISIS-K members who purportedly approached Mr. Sharifullah upon his release from prison are not alleged to be the same individuals involved in 2016. In sum, there is no evidence that the plan, the

17

personnel, or the operational structure of the 2016 and 2021 plots overlapped in any way beyond a shared organizational affiliation with ISIS-K.

Taken together, the evidence at trial describes two discrete episodes spanning five years, two sets of operational personnel, and two distinct roles by Mr. Sharifullah. The sole thread connecting them is that each attack was attributed to ISIS-K—and that Mr. Sharifullah is a member of ISIS-K. That is precisely the "hub and spoke" problem condemned in *Kotteakos*: a common figure (here, Mr. Sharifullah's membership in ISIS-K rather than a common paymaster) does not transform separate transactions into a single conspiracy. 328 U.S. at 773.

## C. The Fourth Circuit's Decisions in *Goss* and *McLean* Compel Acquittal.

The Fourth Circuit has set aside conspiracy convictions in materially analogous circumstances. In *United States v. Goss*, the court reversed convictions where the government charged ten defendants with a single "white liquor" conspiracy but the evidence showed only "a series of separate and unconnected conspiracies" in which the episodes were "so far apart and so differently peopled as to destroy any semblance of relationship." 329 F.2d at 183. The court held that "the indispensable ingredient of a conspiracy is that the accused persons must have had a common aim," and that "[t]he only thing in common [among the defendants] was the law they were breaking." *Id.*

In *United States v. McLean*, the Fourth Circuit applied *Goss* to reverse a drug conspiracy conviction where the government had charged a single twenty-six-year conspiracy but the evidence showed, at most, "what might be termed a non-

18

conspiratorial, though criminal, period" followed by a short conspiratorial period with one set of co-conspirators, followed by a years-long gap, followed by a later conspiracy with an entirely different set of co-conspirators. 1998 WL 879497, at *4–5. The court found "no overlap in the actors (with the exception of McLean) and no 'unitary scheme' or 'common aim' among co-conspirators for the period before 1987," and emphasized that "[t]he mere fact that McLean knew Murchison at the time is insufficient to establish the existence of a conspiracy." Id. at *4.

This case presents an even stronger basis for the same conclusion. In *McLean*, the episodes at least occurred within the same geographic area and involved overlapping commodities. Here, the three attacks are separated by years, continents, and entirely different personnel. The 2016, 2021, and 2024 attacks are, to use *Goss's* formulation, "so far apart and so differently peopled" that no rational jury could find a common aim uniting them into the single overarching conspiracy charged. The fact that Mr. Sharifullah's alleged role in each episode was directed by or connected to ISIS-K no more establishes a single conspiracy than the fact that *McLean*'s various drug operations all involved narcotics established a twenty-six-year conspiracy. As the Supreme Court held in *Kotteakos*, the government may not "string together" separate criminal acts merely because one individual participated in all of them. 328 U.S. at 773.

The variance between the single conspiracy charged and the multiple discrete episodes proved at trial is fatal. Because no rational jury could find the single

19

overarching conspiracy charged beyond a reasonable doubt, the Court must enter a judgment of acquittal.

## CONCLUSION

For the foregoing reasons, the Court should enter a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.

Respectfully submitted,

By Counsel,

_____/s/_____

Geremy C. Kamens
Va. Bar No. 41596
Federal Public Defender
Lauren E. S. Rosen
VA Bar No: 98540
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0800
(703) 600-0880 (fax)
Lauren_Rosen@fd.org
Geremy_Kamens@fd.org

20