**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:25-cr-143** |
| | ) | **The Honorable Anthony J. Trenga** |
| **MOHAMMAD SHARIFULLAH,** | ) | |
| | ) | |
| **Defendant** | ) | |

**MOHAMMAD SHARIFULLAH'S MEMORANDUM REGARDING THE RIPENESS OF
THE RESERVED MOTION FOR JUDGMENT OF ACQUITTAL UNDER RULE 29**

The Court has asked whether the defendant's motion for judgment of acquittal on the greater offense—made at trial, reserved under Federal Rule of Criminal Procedure 29(b), and renewed after discharge under Rule 29(c)—is ripe for decision, given that the jury's verdict on the lesser-included offense presently bars retrial of the greater offense unless the defendant successfully appeals that conviction. The answer is yes. The motion was ripe when made, and the decision is ripe now. Indeed, the text of Rule 29, Supreme Court precedent, and the Federal Rules of Appellate Procedure all establish that the Rule 29 motion is ripe for adjudication.

**I.    The Motion Presents a Fully Developed Legal Question That Rule 29 Requires to Be Decided by the Court.**

Ripeness doctrine guards against the premature adjudication of disputes that "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted); *see Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967) (noting that ripeness turns on fitness of an issue for judicial decision and hardship of withholding adjudication). On the other hand, "[a] case is fit for adjudication 'when the action in controversy is final and not dependent on future uncertainties.'" *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 270 (4th Cir. 2013) (citation omitted).

1

A reserved Rule 29 motion presents the opposite of an unripe dispute: a purely legal question of evidentiary sufficiency on a closed record. By rule, "[i]f the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b). Nothing that has occurred since reservation or the complete trial—and nothing that may occur on appeal—can alter the questions presented. The Rule 29 motion is thus fit for decision now because no further factual development is possible.

The Rule's text, moreover, requires a decision. Rule 29(b) authorizes the court to reserve decision, submit the case to the jury, and "decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict." Rule 29(b). Rule 29(c)(2) independently provides that "[i]f the jury has failed to return a verdict, the court may enter a judgment of acquittal." The Rules thus expressly contemplate post-discharge acquittals on counts that, at the moment of decision, may or may not be retried. The Supreme Court's opinion in *United States v. Martin Linen Supply Co.*, 430 U.S. 564 (1977), arose in this exact posture: the jury deadlocked and was discharged, and the district court thereafter entered judgments of acquittal under Rule 29(c). *Id.* at 566. The Supreme Court treated those acquittals as fully valid and jeopardy-terminating. Moreover, there was no suggestion that the motions were unripe because retrial remained hypothetical at the time of decision.[1]

_____

[1] The Fourth Circuit case cited by the government for the proposition that an appellate vacatur on other grounds "obviates the need to address evidentiary sufficiency," Gov't Mem. Ripeness, ECF 231, at 2, is inapposite. In *United States v. Bowens*, 224 F.3d 302, 314 (4th Cir. 2000), the Fourth Circuit invalidated two convictions on venue grounds so there was no possibility of a retrial (at least on remand), and thus no need to address a separate attack on sufficiency. The two other cases the government cites to suggest that a court need not address sufficiency in the case of a mistrial, *United States v. Bruno*, 661 F.3d 733 (2d Cir. 2011), and *United States v. Jenkins*, 675 F. Supp.2d 647 (W.D. Va. 2009), are inapposite because in both cases, unlike in this one, the trial court declared a mistrial. *Bruno*, 661 F.3d at 736; *Jenkins*, 675 F. Supp.2d at 654. Both also rely on *Richardson v. United States*, 468 U.S. 317 (1984), in which the Supreme Court said, "[r]egardless of the sufficiency of the evidence at petitioner's first trial, he has no valid double jeopardy claim

II.    **A Judgment of Acquittal Has Immediate and Irrevocable Legal Effect; the Ruling Is Therefore Not Advisory.**

The Court's concern may be that a ruling on the Rule 29 motion would "matter" only in the contingent world in which the lesser-included conviction is reversed on appeal. That framing conflates the practical *occasion* for the ruling's protection with its legal *operation*. A judgment of acquittal would terminate jeopardy on the greater offense. *Martin Linen*, 430 U.S. at 571; *Evans v. Michigan*, 568 U.S. 313, 318-19 (2013); *Smith v. Massachusetts*, 543 U.S. 462, 467 (2005); *Burks v. United States*, 437 U.S. 1, 18 (1978). Mr. Sharifullah's legal exposure would change the moment the judgment is entered, not upon some future appellate event.

By contrast, the protection the defendant presently enjoys is defeasible. The parties agree—and so advised the Court at the hearing on June 12, 2026—that any double jeopardy bar arising from the lesser-included conviction, *see Brown v. Ohio*, 432 U.S. 161, 168–69 (1977), dissolves if the defendant successfully appeals because reversal of a conviction at the defendant's behest ordinarily permits retrial. *See Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 308 (1984); *Price v. Georgia*, 398 U.S. 323, 326–27 (1970). And because the jury failed to return a verdict on the greater offense, the absence of a verdict on the greater offense was not itself a jeopardy-

---

to prevent his retrial." *Id.* at 326. But that statement was made in reference to the government's argument that an interlocutory appeal to raise a double jeopardy claim was not "completely collateral to the merits of the charge," "inevitably involves evaluation of the sufficiency of the evidence," and therefore failed to satisfy the collateral order doctrine. *Id.* at 321-322. Rejecting that argument, the Supreme Court held that an interlocutory appeal was available even if appellate review of evidentiary sufficiency at an initial trial was a "necessary component" of the petitioner's "claim of double jeopardy" against a retrial. *Id.* at 322.

*Richardson* also is premised on the fact that a judicial ruling that evidence is insufficient constitutes a jeopardy-terminating event, while a judicial declaration of a mistrial is not. *Id.* at 323. The pending Rule 29 Motion constitutes a request that this Court enter an order that "terminates the original jeopardy" on the death-resulting offense in violation of § 2339B.

3

terminating event. *Richardson v. United States*, 468 U.S. 317, 326 (1984); *Yeager v. United States*, 557 U.S. 110, 118 (2009).

The government accordingly retains the right to retry the greater offense should the conviction be vacated on appeal. *Green v. United States*, 355 U.S. 184, 191 (1957); *see also Sattazahn v. Pennsylvania*, 537 U.S. 101, 113 (2003). The parties therefore hold concretely adverse positions today: Mr. Sharifullah contends the trial evidence was insufficient and that jeopardy on the greater offense should be terminated by a judgment of acquittal. The government contends the evidence was sufficient and therefore its ability to retry on the greater in the event of a successful appeal of the lesser should remain intact. That is a live controversy, and a ruling resolving it grants or denies relief that the status quo does not supply. A ruling that alters the parties' legal rights is, by definition, not advisory.

With respect to the Court's question at the June 12 hearing regarding whether Mr. Sharifullah's repetition over multiple interviews of his involvement in an operation on August 26, 2021, could corroborate his confession, the clear answer is no. A defendant's statement, even one repeated over the course of multiple interviews with the FBI, is not "substantial independent evidence." *Opper v. United States*, 348 U.S. 84, 93 (1954); *accord Smith v. United States*, 348 U.S. 147, 156 (1954). Corroboration under the *Opper* standard requires "substantial *independent* evidence," 348 U.S. at 93 (emphasis added)—evidence from a source other than the accused—and *Rodriguez-Soriano* holds that a later statement repeating "the same details" as an earlier confession does nothing to "'fortif[y] the truth of the confession.'" 931 F.3d at 290 (quoting *United States v. Stephens*, 482 F.3d 669, 672-73 (4th Cir. 2007). The government even conceded this point as to the five FBI interviews, stating that "[t]he government [] does not argue that the five FBI

interviews corroborate each other." ECF No. 227 at 24 n.4. Consistency across retellings only measures a narrator's command of his own story, not the story's truth.

Membership in ISIS-K similarly does not corroborate participation in a conspiracy to provide support resulting in the deaths at Abbey Gate. Evidence that Mr. Sharifullah belonged to ISIS-K for years corroborates membership—a different fact, and one not in dispute. ECF No. 221 at 2. It does not "implicate the accused" in the conduct the government must prove, *Smith*, 348 U.S. at 154, because it has no tendency to show that he scouted the route to the airport on August 26, 2021.

In other words, evidence of mere propensity, such as membership in ISIS-K, does not amount to corroboration of involvement in the specific scheme to conduct the Abbey Gate attack. The Fourth Circuit reaffirmed this point in *Stephens* by rejecting the argument that evidence demonstrating the defendant's knowledge of a drug dealer in the area corroborated the defendant's involvement in a drug conspiracy. In *Stephens*, a law enforcement agent provided testimony about the local drug trade (that the agent knew of a drug dealer named "Red" who drove a white Mazda) that matched details from the defendant's confession of involvement in a drug conspiracy with a drug dealer named "Red" who drove a white Mazda. But the Fourth Circuit held that "corroboration of these details does not establish the necessary link between [the defendant] and [the drug dealer] to prove that the two were engaged in a conspiracy to sell cocaine." 482 F.3d at 673; *see also Smith*, 348 U.S. at 154 (requiring corroborative evidence to "implicate the accused in order to show that a crime has been committed").

The government's leading case, *United States v. Brown*, 617 F.3d 857 (6th Cir. 2010), likewise observed that corroboration of one admitted offense does not permit the government to prove another through the confession, where the corroborating evidence "did not indicate"

5

involvement in the latter. 617 F.3d at 863-64 (citing *United States v. Calhoun*, 1993 WL 280324 (6th Cir. July 26, 1993)). In this case, mere membership in ISIS-K not only cannot itself support criminal punishment, *see* Rule 29 Motion, ECF No. 213 at 11 n.1 (citing *Keyishian v. Bd. of Regents*, 385 U.S. 589, 607 (1967), and *United States v. Taleb-Jedi*, 566 F. Supp. 2d 157, 175 (E.D.N.Y. 2008)); but it also cannot corroborate an admission to a specific criminal act.

Adding the two together does not change the math. Corroboration requires "substantial independent evidence" that tends to establish the trustworthiness of "the essential facts admitted," *Opper*, 348 U.S. at 93—here, the scouting of a route used by the Abbey Gate bomber. Evidence of repetition is not independent evidence, and evidence of ISIS-K membership has no link to the essential facts of the offense at issue. Combined, they establish only that a member of ISIS-K repeatedly said he scouted a route near the South Gate at Hamid Karzai International Airport. What the government offers as a combination is the uncorroborated confession itself, restated.

III.   **Withholding Decision Imposes Concrete Hardship and Stalls the Very Appeal on Which the Asserted Contingency Depends.**

The hardship prong of ripeness analysis likewise favors decision, for two independent reasons. First, the defendant's appellate calculus is directly distorted by an unresolved motion. At present, appeal of the lesser-included conviction potentially would expose the defendant to retrial on the greater offense. The defendant cannot rationally exercise the statutory right to appeal without knowing whether a judgment of acquittal has eliminated that exposure. Forcing that election blind operates as a practical penalty on the exercise of appellate rights, in tension with the principles underlying *Green v. United States*, 355 U.S. 184, 193–94 (1957).

Second, the undecided motion suspends the appellate timetable itself. Under Federal Rule of Appellate Procedure 4(b)(3)(A), a timely Rule 29 motion tolls the time to appeal until entry of the order disposing of it. The appellate proceedings whose outcome supposedly determines the

motion's relevance therefore cannot properly commence while the motion remains pending. The contingency cannot mature until the motion is decided—a complete answer to any suggestion that the Rule 29 motion is not ripe for decision.

The Rules, indeed, affirmatively embrace deciding questions whose operative effect is contingent on appeal. Rule 29(d) requires a court granting acquittal after a guilty verdict to rule conditionally on any new-trial motion, specifying how the case should proceed "if the judgment of acquittal is later vacated or reversed." Fed. R. Crim. P. 29(d)(1); *accord* Fed. R. Civ. P. 50(c). The drafters did not regard appeal-contingent operative effect as an obstacle to decision; they treated it as a reason to decide now, while the record is fresh, so that the Court of Appeals receives a complete and final judgment on all issues.

## IV.    There Is No Basis to Treat the Motion as Ripe but the Decision as Premature.

Nor is there any doctrinal home for a possible middle position—that the motion made at trial was ripe, but the post-trial decision is not. Justiciability attaches to controversies, not to the subsequent utility of remedies. The motion was indisputably ripe when made: jeopardy had attached, the government had rested, and the sufficiency challenge was fully formed. Rule 29(b)'s reservation mechanism *defers* decision; it does not un-ripen the motion. To the contrary, the Rule's mandate that the court "must decide the motion" on the reserved-time record presupposes that a decision will issue, and Rule 29(c)(1)'s fourteen-day clock reflects an expectation of prompt post-discharge resolution rather than abeyance pending appellate developments. The only mechanisms for declining to decide—denial as moot or denial without prejudice—are unavailable. The motion is not moot, because effective relief remains available that the status quo does not provide, and a without-prejudice denial would relegate the sufficiency question to litigation years hence on a cold record, contrary to Rule 29(b)'s instruction.

Finally, to the extent the Court's hesitation reflects the unreviewability of a present ruling—because a judgment of acquittal on a count on which the jury hung cannot be appealed by the government, *see* 18 U.S.C. § 3731; *Martin Linen*, 430 U.S. at 569–70—that is a feature of the Double Jeopardy Clause's treatment of acquittals, not a defect of ripeness. And it cuts both ways: a *denial* of the motion merges into the judgment and is fully reviewable on the defendant's appeal. Either disposition would be consistent with the applicable rules of procedure. Not ruling on the motion, however, would be inconsistent with those rules.

## CONCLUSION

For these reasons, the reserved and renewed motion for judgment of acquittal on the greater offense is ripe, and the Court should proceed to decide it on the merits, first on the basis of the evidence as it stood at the time the ruling was reserved, Fed. R. Crim. P. 29(b), and alternatively based on all the evidence. Federal R. Crim. P. 29(c).

Respectfully submitted,

By Counsel,
_____/s/_____
Geremy C. Kamens
Va. Bar No. 41596
Federal Public Defender
Lauren E. S. Rosen
VA Bar No: 98540
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0800
(703) 600-0880 (fax)
Lauren_Rosen@fd.org
Geremy_Kamens@fd.org