**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:25-cr-143** |
| | ) | **The Honorable Anthony J. Trenga** |
| **MOHAMMAD SHARIFULLAH,** | ) | |
| | ) | |
| **Defendant** | ) | |

**MOHAMMAD SHARIFULLAH'S SUPPLEMENTARY MEMORANDUM IN SUPPORT
OF RULE 29 MOTION REGARDING PROXIMATE CAUSATION**

Mohammad Sharifullah, by counsel, respectfully submits this Supplement in support of his pending motion for judgment of acquittal on the death-resulting element of 18 U.S.C. § 2339B. Since the completion of post-trial briefing, the Fourth Circuit decided *United States v. Covington*, ___ F.4th ___, 2026 WL 1902549 (4th Cir. July 2, 2026), which bears directly on the standard governing that motion. *Covington* confirms two propositions that control the Rule 29 analysis here. First, when a jury is instructed on a lesser causation standard than the offense actually requires, a sufficiency challenge is measured against the true elements of the offense, not the erroneous instruction the jury received. *See Musacchio v. United States*, 577 U.S. 237, 243 (2016). Second, statutes that make a defendant liable when "death results from" his offense conduct ordinarily require proof of proximate causation, and the Controlled Substances Act's penalty provision, 21 U.S.C. § 841(b), is a narrow exception to that rule rather than the model for it.

Accordingly, the Court should evaluate Mr. Sharifullah's pending Rule 29 motion against the death-resulting form of § 2339B as it is properly construed—that is, with an element requiring proof beyond a reasonable doubt that the charged conduct was the proximate cause of death. Measured against that standard, the evidence was insufficient, and the Court should enter a judgment of acquittal on the death-resulting element.

I.    **Under *Musacchio*, the Court Assesses Sufficiency Against the True Elements of the Death-Resulting Offense, Not the But-For Instruction the Jury Received.**

The starting point for evaluation of the pending Rule 29 motion is the legal standard against which the evidence is measured. In *Musacchio*, the Supreme Court held that "a sufficiency challenge should be assessed against the elements of the charged crime," not against a jury instruction that departed from those elements. 577 U.S. at 243. There, the instruction erroneously added an element the statute did not require, and the Court held the added element did not become "law of the case" for sufficiency purposes; review proceeded against the correct, statutory elements. *Id.* at 241-43. The *Covington* panel assumed that the same principle applied in the mirror-image posture presented here—where the instruction omitted a required element—assessing sufficiency "by reference to Section 242's true 'elements' rather than 'how the jury was instructed.'" *Covington*, 2026 WL 1902549, at *3 & n.1 (quoting *Musacchio*, 577 U.S. at 243).

The Court should apply that same framework here. The jury in this case was instructed that the government need prove only but-for causation to establish the death-resulting element, and it was unable to unanimously find guilt even under that standard. But if the death-resulting form of § 2339B in fact requires proof of proximate causation, then the but-for-only instruction lowered the government's burden below what the statute requires. Under *Musacchio*, the remedy on a sufficiency challenge is not to hold the government to the lower evidentiary standard as defined by the jury instructions given at the trial, but to test the evidence against the offense's actual elements. 577 U.S. at 243. The Court therefore should assess Mr. Sharifullah's Rule 29 motion against a death-resulting element that includes proximate causation.

II.     *Covington* **Confirms That § 2339B's Death-Resulting Element Requires Proof of Proximate Causation, and That § 841(b) Is an Exception to—Not the Rule for— "Results From" Statutes.**

In its Response to Mr. Sharifullah's motion for an advanced ruling requiring a proximate cause jury instruction, the government twice cited Judge Young's opinion in *United States v. Covington*, Case No. 3:23-cr-68, 2025 WL 1436567 (E.D. Va. May 19, 2025), which applied the no-proximate-cause rule from 21 U.S.C. § 841, and rejected the defense's argument that 18 U.S.C. § 242 requires proof of both actual and proximate causation. *See* ECF No. 120 at 4-5, 8; *cf.* ECF No. 131 at 9-10 (defense reply noting that the district court opinion failed to cite the most applicable Fourth Circuit opinion, *United States v. Harris*, 701 F.2d 1095 (4th Cir. 1983), which required proof of proximate causation to establish a death-resulting enhancement in 18 U.S.C. § 241). Section 242, like § 241 and 18 U.S.C. § 2339B, provides for an enhanced statutory maximum "if death results" from the acts committed in violation of the offense. *See* § 242.

On appeal, the Fourth Circuit reversed the district court's ruling on the element of proximate cause and vacated the defendant's conviction in violation of § 242. *United States v. Covington*, ___ F.4th ___, 2026 WL 1902549, at *1 (4th Cir. July 2, 2026). Interpreting materially-identical "death resulting" text, the Fourth Circuit held that a harm "only 'results from' a defendant's Section 242 violation if the defendant's conduct was both the but-for and proximate cause of the victim's injury." *Covington*, 2026 WL 1902549, at *6. The court grounded that holding in "background principles about how causation operates in criminal law": where an offense "requires not merely conduct but also a specified result of conduct, a defendant generally may not be convicted unless his conduct is both (1) the actual cause, and (2) … the 'proximate cause' of the result." *Id.* at *4 (quoting *Burrage v. United States*, 571 U.S. 204, 210 (2014)). That

"general rule applies even when a statute does not 'expressly impose' a proximate-cause requirement." *Id.* (quoting *Paroline v. United States*, 572 U.S. 434, 446 (2014)).

Critically, *Covington* also addressed—and rejected—the precise analogy on which the government relied and on which the Court's pretrial ruling rested: that § 2339B's death-resulting language should be read like the "death results" provision of 21 U.S.C. § 841(b). *See United States v. Sharifullah*, ___ F. Supp.3d ___, 2026 WL 1049214, at *2 (E.D. Va. Apr. 19, 2026), ECF No. 202 at 4 ("As a textual matter, there is no meaningful way to distinguish between the penalty enhancement language in Section 2339B and that in Section 841(b)(1)(C)"). In *Covington*, the government made the same argument premised on the assumption that the Fourth Circuit's § 841(b) precedents "transfer[] neatly" to a different "results from" statute. 2026 WL 1902549, at *5. The Fourth Circuit disagreed, explaining that "the reality is not so simple." *Id.*

The court characterized § 841(b)'s no-proximate-cause rule not as the norm but as a narrow exception confined to a particular class of offenses. Adopting the Ninth Circuit's framing, the Fourth Circuit "understand[s] '[s]entencing factors applicable to drug crimes' like Section 841(b)'s penalty provision to be an 'exception to the rule that the [g]overnment prove proximate cause when the charging statute calls for a certain result.'" *Id.* (quoting *United States v. Pineda-Doval*, 614 F.3d 1019, 1028 (9th Cir. 2010)).[1] That exception exists because such factors are understood to impose "strict liability," a category that is "generally disfavored" and that "further suggests that Section 841(b)'s lack of a proximate-cause requirement may be the exception rather than the rule." *Id.* (quoting *United States v. United States Gypsum Co.*, 438 U.S. 422, 437-38 (1978)).

---

[1] The government's Response to Mr. Sharifullah's motion for an advanced ruling on proximate cause has not aged well, as it sought to distinguish the Ninth Circuit's decision in *Pineda-Doval* — which described drug crimes as the "sole 'exception to the rule that the Government prove proximate cause when the charging statute calls for a certain result'"—as inconsistent with "the textual analysis required by the Fourth Circuit." ECF No. 120 at 7-8.

That reasoning undermines the premise of the Court's pretrial ruling rejecting a proximate-causation requirement to establish the death-resulting element of § 2339B's enhanced statutory maximum. The Court denied Mr. Sharifullah's motion for an advance ruling requiring a proximate causation instruction on the ground that § 2339B and § 841(b) share indistinguishable "death-results" language and that Congress's use of "result" "suggests its intent to eschew common law proximate cause concepts." *Sharifullah*, 2026 WL 1049214, at *2, ECF No. 202 at 4-5. *Covington* forecloses that inference. The Fourth Circuit held that the same "results from" language does carry a proximate cause requirement as a matter of "background principles," 2026 WL 1902549, at *4, and that § 841(b) is exceptional precisely because it departs from that baseline. A shared verb therefore does not require importation of § 841(b)'s strict-liability rule into § 2339B. Under *Covington*, the "results from" language points in the opposite direction.[2]

---

[2] The government separately argued that Congress added § 2339B's death-results language in 2001 against the backdrop of decisions construing § 841(b) to require only but-for causation, and that subsequent amendments left that language "undisturbed." ECF No. 120 at 5; *see* ECF No. 202 at 5. *Covington* rejected a similar argument that, unlike in § 242, explicit proximate cause language in other statutes supported the inference that § 242 lacked a proximate cause requirement, explaining that the "familiar rule of thumb is far less helpful when analyzing 'different statutes,' even when those statutes have 'identical language,'" 2026 WL 1902549, at *5 (quoting *Yates v. United States*, 574 U.S. 528, 537 (2015)), and discounting post-enactment developments as shedding no "light on what legislators understood" at the time of enactment, *id.* (paraphrasing *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011)). The court likewise observed that "[m]uch of the express foreseeability or proximate-cause language courts have identified appears in statutes that criminalize far different conduct than Section 242. *Covington*, 2026 WL 1902549, at *5 (citing *United States v. Patterson*, 38 F.3d 139, 145 n.7 (4th Cir. 1994), and *United States v. Webb*, 655 F.3d 1238, 1256-57 (11th Cir. 2011)).

More fundamentally, the 2001 Congress did not legislate against a uniform reading of "results" language. By then, the criminal civil-rights statutes had been construed for decades to require proximate causation. *See Harris*, 701 F.2d at 1101; *United States v. Marler*, 756 F.2d 206, 215–16 (1st Cir. 1985); *United States v. Hayes*, 589 F.2d 811, 820–22 (5th Cir. 1979); *United States v. Guillette*, 547 F.2d 743, 749–50 (2d Cir. 1976). Confronted with two lines of authority, Congress is presumed to have legislated against "the backdrop[] of certain unexpressed presumptions," *Covington*, 2026 WL 1902549, at *4 (quoting *Hewitt v. United States*, 606 U.S. 419, 431 (2025))—here, the traditional rule that proximate cause attaches whenever a statute conditions punishment on a specified result.

5

### III.    § 2339B Falls Within the General Proximate-Cause Rule, Not the § 841(b) Exception, Because Material Support Is Not Inherently Likely to Cause Death.

The remaining question is whether § 2339B belongs in the general category, which requires proximate cause, or within the narrow § 841(b) exception, which does not. *Covington* supplies the criterion for making that distinction, and it places § 2339B firmly within the general rule.

The reason § 841(b) dispenses with proximate cause is that drug distribution belongs to a class of conduct for which a resulting death is treated as "'always foreseeable,'" *United States v. Jeffries*, 958 F.3d 517, 524 (6th Cir. 2020), such that liability is effectively strict. *Covington*, 2026 WL 1902549, at *5; *see also Sharifullah*, 2026 WL 1049214 at *2, ECF No. 202 at 4 (recognizing that § 841(b) puts "drug dealers … on clear notice that their sentences will be enhanced if people die from using the drugs they distribute" (quoting *United States v. Alvarado*, 816 F.3d 242, 249 (4th Cir. 2016)).[3] The strict-liability treatment is tethered to the inherent lethality of the predicate act: distributing a controlled substance carries within it the very risk—death from ingestion—that the enhancement punishes.

---

[3] In a recent dissenting opinion, Eleventh Circuit Judge Gerald Tjoflat argues strenuously that courts took a wrong turn, beginning with the Fourth Circuit's opinion in *United States v. Patterson*, 38 F.3d 139 (4th Cir. 1994), in carving out a special rule dispensing with proximate cause in the context of 21 U.S.C. § 841(b)'s death-resulting language. *United States v. Lebarron*, 178 F.4th 646, 663-678 (11th Cir. 2026) (Tjoflat, J., dissenting). In *Lebarron*, the defendant, convicted of possession with the intent to distribute resulting in death, "sought to make the simple argument that he did not distribute drugs to [the decedent] but that she, in fact, stole them." *Id.* at 668. Pointing to the routine application of proximate causation to harm-resulting language in tort cases, Judge Tjoflat stated: "I cannot imagine why we should be more reticent to infer this basic principle of causation in the criminal context" than in civil cases. *Id.* at 671. He likewise rejected the claim that death is "always foreseeable" in the context of drug distribution, arguing that it "flies off the page as problematic," by requiring that courts "set aside basic due process protections for criminal defendants because a court is unable to contemplate where they might apply." *Id.* at 673 n.12. Conceding that *United States v. Webb*, 655 F.3d 1238 (11th Cir. 2011), was binding in the Eleventh Circuit, he argued it was "wrong from the start," and urged reconsideration of the opinion en banc. *Id.* at 673-75.

The text of § 841(b) thus reflects a tight connection between the proscribed conduct elements and death. Its enhancement applies only "if death or serious bodily injury results *from the use of such substance*"—that is, from the use of the very substance the defendant distributed. 21 U.S.C. § 841(b)(1)(C) (emphasis added). The statute thus identifies the lethal instrumentality, and that instrumentality is the thing the defendant himself supplied. *See Alvarado*, 816 F.3d at 249.

Section 2339B contains no comparable text closely tying harm to the defendant's offense conduct. Its enhancement applies "if the death of any person results," 18 U.S.C. § 2339B(a)(1)—language tethered to no instrumentality, no violent act, and no use of the support the defendant provided. Where § 841(b) conditions enhanced punishment on a death flowing directly from the dangerous article the defendant supplied, § 2339B conditions it on a death that could occur through the subsequent and independent conduct of others. That structural difference is what separates the strict-liability exception from the general rule.

Indeed, the definition of prohibited "material support" bears no such intrinsic connection to death. As defined in § 2339B(g)(4), which incorporates the definition in § 2339A, material support is "an extremely broad term that encompasses any support or resources aside from medicine or religious materials." ECF No. 115 at 6. To be sure, the definition includes "weapons, lethal substances, [and] explosives." § 2339A(b)(1). But it also reaches "financial services, lodging, … communications equipment," "transportation," and other conduct that is not violent, not dangerous, and not remotely lethal on its own. *Id.* Indeed, even support "meant to 'promot[e] peaceable, lawful conduct'" is prohibited because it could allow the organization to reallocate scarce resources to other more nefarious ends. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 30 (2010); *accord United States v. Dhirane*, 896 F.3d 295, 303 (4th Cir. 2018). Money—the quintessential example of prohibited support—causes no harm by itself, particularly if used only

to "purchase medical equipment or supplies," but it nonetheless remains prohibited by § 2339B. *See Dhirane*, 896 F.3d at 303.

The whole point of § 2339B, in other words, is that its prohibition broadly encompasses virtually anything aside from medicine or religious materials that "frees up other resources within the [designated terrorist] organization that may be put to violent ends." *Id.* at 303 (quoting *Humanitarian Law Project*, 561 U.S. at 30). That is the antithesis of the drug-distribution exception in which death is purportedly "'always foreseeable'" from the distribution of a specific prohibited life-threatening substance such as fentanyl or heroin. *Covington*, 2026 WL 1902549, at *5.

Another death-results provision that courts have placed outside the proximate-cause rule confirms the boundary of the exception. The federal carjacking statute requires no separate proximate cause showing because the offense itself "requires an intent to cause death or serious bodily injury," making a foreseeability requirement "redundant and even confusing." *United States v. Felder*, 993 F.3d 57, 70 (2d Cir. 2021); *see* ECF No. 115 at 5–6. Section 2339B sits at the opposite end of the spectrum. The statute requires no intent to further violence: a defendant violates it by providing support with knowledge of the organization's designation or of its terrorist activity, 18 U.S.C. § 2339B(a)(1), even when the support is "meant to 'promot[e] peaceable, lawful conduct.'" *Humanitarian Law Project*, 561 U.S. at 30. A defendant can therefore commit the offense while affirmatively intending that no one be harmed. *Id.* at 17 (noting that § 2339B does not require "specific intent to further the organization's terrorist activities"). Consequently, a proximate-cause requirement is not "redundant"—it is the only doctrine that confines liability for a resulting death to defendants whose own conduct proximately created the risk of it.

The government has asserted that providing material support to a designated foreign terrorist organization is "at least as 'inherently dangerous' as 'drug distribution.'" ECF No. 120 at 5 (quoting *Harden*, 893 F.3d at 448). That assertion conflates the conduct § 2339B criminalizes with the violence of the organizations it targets. Terrorist organizations typically are dangerous, which is why, at least until recently, they have been so designated.[4] No one disputes that terrorism is violent by definition. But material support, as the statute defines it, may not be. In other words, the conduct the statute reaches is the support itself, and Congress deliberately extended the prohibition to support with no nexus to violence at all. Money, lodging, transportation, and communications equipment kill no one; they become connected to a death, if ever, only through the later, independent choices of the organization and its operatives—the very attenuation that proximate cause exists to police. *See Covington*, 2026 WL 1902549, at \*4.

Under *Covington*, it is the government's burden to justify extending the § 841(b) exception beyond its context. The Fourth Circuit faulted the government there for failing to "explain how" the statute before it was "analogous to the Controlled Substances Act in any relevant sense." *Id.* at \*5. Here, the government has never made that showing for § 2339B, and it cannot—a statute that criminalizes a donation because it "frees up other resources within the organization," *Humanitarian Law Project*, 561 U.S. at 30, bears no relevant resemblance to one that criminalizes distribution of fentanyl.

Because material support in violation of § 2339B—which unlike § 2339A need not be connected to a specific terrorist act—is not inherently likely to cause death, the strict-liability rationale that *Covington* identified as the basis for the § 841(b) exception is absent. Treating

---

[4]    *Cf.*    https://www.whitehouse.gov/fact-sheets/2025/09/fact-sheet-president-donald-j-trump-designates-antifa-as-a-domestic-terrorist-organization/

§ 2339B like § 841(b) would extend a "generally disfavored" strict-liability regime, *Covington*, 2026 WL 1902549, at \*5 (quoting *Gypsum*, 438 U.S. at 438), to a statute reaching conduct often many steps removed from any death—so that "deaths that have only the most tenuous connection to charged conduct and have innumerable other intervening direct causes … would potentially result in additional criminal liability in almost every material support case." ECF No. 115 at 6.

Without a proximate cause requirement, drugs stolen from a drug dealer and later consumed by the thief resulting in death would warrant the enhancement against the drug dealer under § 841(b). *Lebarron*, 178 F.4th at 664 (Tjoflat, J., dissenting). Likewise, without a proximate cause requirement, an El Salvadoran store-owner who pays off members of a Mara Salvatrucha (MS-13) clique,[5] and whose funds are used to purchase medical supplies (which would violate § 2339B, *Dhirane*, 896 F.3d at 303), would potentially receive the enhanced statutory range if the medical supplies are negligently dispensed in a manner that results in a death.[6] *Covington*'s insistence that the § 841(b) exception not be reflexively extended to dissimilar statutes, 2026 WL 1902549, at \*5, confirms that § 2339B is governed by the general rule requiring proximate causation.

## IV.    Measured Against a Death-Resulting Element That Includes Proximate Causation, the Evidence Was Insufficient.

Once the death-resulting element is correctly construed to require proximate causation, the evidentiary insufficiency identified in Mr. Sharifullah's prior briefing is dispositive. Proximate cause "serves … to preclude liability in situations where the causal link between conduct and result

---

[5] MS-13 was designated as a foreign terrorist organization on February 20, 2025. https://www.state.gov/foreign-terrorist-organizations/

[6] This hypothetical assumes that there need be no connection between offense conduct and the United States or United States nationals as perpetrators or victims. *See* Gov't Opp'n Motion Bar Criminal Liabilty, ECF 121. *Cf.* Apr. 21, 2026, Order denying Defense Motion to Bar Criminal Liability Based on Foreign Conduct by Foreign Actors Against Foreign Interests, ECF 210.

is so attenuated that the consequence is more aptly described as mere fortuity," and turns on "foreseeability or the scope of the risk created by the predicate conduct." *Covington*, 2026 WL 1902549, at \*4 (quoting *Paroline*, 572 U.S. at 445). The evidence at trial established, at most, that Mr. Sharifullah scouted a route almost a kilometer away from and hours before the bombing on August 26, 2021; it did not establish that the deaths at Abbey Gate—brought about by a separate bomber moving through a chaotic crowd of thousands, and by the intervening decisions of others— were a natural and foreseeable result of that scouting, as opposed to an attenuated consequence for which Mr. Sharifullah is not legally responsible. *See* ECF No. 224 at 17–24; ECF No. 213 at 6–7.

The government's own theory underscores the point. Its causation showing depends on a chain of independent actors—ISIS-K leadership giving a "go-ahead," a distinct and unknown attacker (identified by the government only through ISIS-K propaganda as a man named Logari) working his way through the crowd over a period of hours, and the intervening conduct of others outside Abbey Gate to facilitate passage. *See* ECF No. 227 at 9-12. Even accepting the government's account of but-for contribution, that attenuated inferential chain is precisely the kind of causal link that proximate cause exists to cut off. *Covington*, 2026 WL 1902549, at \*4. Because no rational trier of fact could find beyond a reasonable doubt that the charged conduct actually and proximately caused death, the Court should grant the motion for judgment of acquittal on the death-resulting element.

### CONCLUSION

For the foregoing reasons, the Court should assess the pending Rule 29 motion against a death-resulting element that requires proof of proximate causation and, so measured, enter a judgment of acquittal on the death-resulting element of 18 U.S.C. § 2339B.

11

Respectfully submitted,

By Counsel,

_____/s/_____

Geremy C. Kamens
Va. Bar No. 41596
Federal Public Defender
Lauren E. S. Rosen
VA Bar No: 98540
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0800
(703) 600-0880 (fax)
Lauren_Rosen@fd.org
Geremy_Kamens@fd.org

12