IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| v. | ) | Case No. 1:25-cr-00143-AJT-1 |
| MOHAMMAD SHARIFULLAH, | ) | |
| *Defendant.* | ) | |

# MEMORANDUM OPINION AND ORDER

On April 29, 2026, a jury returned a guilty verdict against Defendant Mohammad Sharifullah ("Defendant" or "Sharifullah") on the charge of conspiracy to provide material support to a terrorist organization and "deadlocked" on the issue of whether the conspiracy for which he was found guilty resulted in the death on August 26, 2021, of thirteen U.S. service members and 160 other persons by a suicide bomber at the Abbey Gate of the Hamid Karzai International Airport ("HKIA") in Kabul, Afghanistan. As a result, Defendant's conviction under 18 U.S.C. § 2339B subjects him to a maximum punishment of up to twenty years rather than the statute's enhanced penalty of up to life in prison that applies if the offense resulted in death.

Before the Court is Defendant's Motion for Acquittal pursuant to Federal Rule of Criminal Procedure 29, [Doc. No. 213] (the "Rule 29 Motion"), in which he contends that the Government's evidence was insufficient as a matter of law for the jury to find that his conduct resulted in death, as required for an enhanced penalty conviction under Section 2339B. In support of that position, Defendant argues that the only evidence that would have supported the enhanced penalty conviction was his various statements to FBI officers and a journalist, which lacked sufficient corroboration to establish their trustworthiness. The Court held a hearing on the Motion on June

12, 2026, following which it took it under advisement. For the reasons discussed below, the Motion is **DENIED**.

## I. BACKGROUND

### A. Procedural History

As charged in the Indictment, and undisputed by the parties, on August 26, 2021, during the evacuation of U.S. and partner forces from Afghanistan, a suicide bomber detonated an explosive device at or near HKIA's Abbey Gate, killing thirteen U.S. military service members and approximately 160 civilians. [Doc. No. 18] ¶¶ 9–10. Following an investigation, the Government concluded that the suicide bomber was a member of the designated foreign terrorist organization Islamic State of Iraq and ash-Sham Khorasan ("ISIS-K") named Abdul Rahman al-Logari. *Id.* ¶ 11.

On May 15, 2025, a grand jury returned an indictment charging Sharifullah, a foreign national, with a single count of conspiracy to provide material support to a designated foreign terrorist organization resulting in death, in violation of 18 U.S. Code § 2339B.[1] *Id.* In addition to the Abbey Gate bombing, the Indictment references other terrorist bombings and attacks allegedly participated in by Sharifullah, and the sole count of the Indictment alleges broadly that:

> From in or about 2016, and continuing thereafter up to and including in or about March 2025 . . . Mohammad Sharifullah . . . and others known and unknown . . . did conspire to provide 'material support or resources,' . . . namely, personnel (including himself) [or] services, to a foreign terrorist organization-namely, ISIS-K . . . [and] . . . [t]he deaths of Victims 1 through 13, each a citizen of the United States and a United States servicemember, as well as the deaths of over one hundred civilians, resulted from the commission of this offense. (In violation of Title 18, United Sates Code, Section 2339B.)

*Id.* at 5–6.

---

[1] 18 U.S.C. § 2339B prohibits "knowingly provid[ing] material support or resources to a foreign terrorist organization, or attempt[ing] or conspir[ing] to do so," and "if the death of any person results," the statute provides that the defendant "shall be imprisoned for any term of years or for life." 18 U.S.C. § 2339B(a)(1).

The trial began on April 20, 2026. The defense moved for a judgment of acquittal on the entirety of count one of the Indictment at the close of the Government's case in chief on April 23, 2026, [Doc. No. 213]; and the Court reserved its decision on the motion pursuant to Rule 29(b) of the Federal Rules of Criminal Procedure. The defense orally renewed its Rule 29 Motion at the close of all the evidence on April 28, 2026, and the Court again reserved decision. On April 29, 2026, the jury found Sharifullah guilty of conspiring to provide material support or resources to a designated foreign terrorist organization in violation of 18 U.S.C. § 2339B but "deadlocked" on whether death resulted from the conspiracy for which he was convicted [Doc. No. 218].[2]

After the jury verdict on April 29, 2026, the defense withdrew its Rule 29 Motion with respect to the jury's guilty verdict on the conspiracy offense, with a 20-year maximum sentence, but renewed the Rule 29 Motion as to the enhanced penalty element charged in the indictment. [Doc. No. 221]. The parties briefed the motion, and the Court heard oral argument on June 12, 2026.[3]

---

[2] The effect of the jury's deadlocking on this charge was the subject of post-trial motions. The Government argued that the jury's deadlock amounted to a mistrial on the death-results element and asked the Court to dismiss the death-results allegation without prejudice, thereby preserving, in its view, its ability to retry the Defendant solely on the enhanced penalty, although the Government disclaimed any present intention to do so. [Doc. No. 225]. The Court held a hearing on the Government's motion to declare a mistrial and dismiss the death-results allegation without prejudice, and denied it from the bench after concluding there was no mistrial because Sharifullah had been found guilty by a unanimous jury on the one and only count charged in the Indictment, the jury's deadlock on the death-results element did not affect the finality of that underlying guilty conviction since it only pertains to Sharifullah's sentence, and the Government cannot as a matter of law retry the Defendant on the death-results element, absent the reversal and vacation of the conspiracy conviction. [Doc. No. 230]. The Court also scheduled a sentencing hearing on the Defendant's conspiracy conviction for September 16, 2026.

[3] The Court *sua sponte* raised whether the Defendant's Rule 29 Motion as to the enhanced penalty presented an actual controversy ripe for decision since that enhanced penalty will have no effect on the Defendant's sentencing on his conspiracy conviction, scheduled for September 16, 2026, and he may not be retried absent a reversal and vacation of that conviction. Both the Government and the Defendant take the position that the Court retains jurisdiction to decide the Rule 29 Motion as to the enhanced penalty; and upon further consideration, the Court agrees that the Rule 29 Motion with respect to the enhanced penalty charge remains ripe for adjudication because the judgment of acquittal Sharifullah seeks would terminate jeopardy on the penalty enhancement, and absent a reversal on appeal, would preclude the Government from retrying the penalty enhancement even if Sharifullah's conviction is reversed on appeal. *See Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 308 (1984) ("The general rule is that the [Double Jeopardy] Clause does not bar reprosecution of a defendant whose conviction is overturned on appeal."). There is,

B. Evidence at Trial

At trial, the Government placed into evidence the statements Sharifullah made to a journalist in 2020 while in custody at Pul-e-Charkhi prison in Kabul, and to FBI officers during a series of five interviews in March 2025, the first two of which occurred while Sharifullah was in Pakistani custody,[4] and the last three of which occurred while he was in U.S. custody.[5]

As described by Sharifullah, as a young adult, Sharifullah was recruited to ISIS-K in 2016 by one of its leaders, Dr. Naqib. Gov. Exs. ("GE") 20-6T at 1; 11-1T at 2–5, 13. Sharifullah's parents opposed his involvement in ISIS-K, and Sharifullah was given a fake business card to conceal his membership in ISIS-K from his family, which U.S. partner forces in Afghanistan recovered during a military raid on an ISIS-K cell leader's safehouse. GE 20-39T at 1–2; 11-1T at 21–22. During his interviews with the journalist and FBI officers, Sharifullah described his involvement with ISIS-K as part of a cell consisting of approximately ten members that included individuals named Dr. Naqib, Faridoon, Zelgai, and Qari Nawab. GE 20-7T to 20-16T; 11-1T at 13–16. Sharifullah's duties with ISIS-K typically consisted of conducting route surveillance, transferring suicide bombers by motorcycle, and transferring weapons. *See, e.g.*, GE 20-27T at 16–17; 20-18T at 3–5; 20-26T at 3; 20-20T at 1–4; 11-T at 14. Sharifullah confessed to his involvement in a 2016 attack in the Bana'ee district of Kabul against Nepali embassy guards in an unarmored minibus, for which he scouted the bus route and transported on the back of his motorcycle the suicide attacker, who he identified as Irfan. GE 20-18T at 2–7. He further confessed

---

therefore, a live controversy, and a ruling resolving it grants or denies relief that the status quo does not supply. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967) (ripeness turns on fitness of an issue for judicial decision and hardship of withholding adjudication).

[4] Following Sharifullah's release from prison in August 2021, Pakistan's Inter-Service Intelligence ("ISI") authorities seized Sharifullah in early 2025, together with his wife and his three children. [Doc. No. 125].

[5] Prior to trial, Sharifullah moved to suppress these statements, [Doc. No. 125], which the Court denied in a written opinion. [Doc. No. 199].

to conducting surveillance and transporting the bomber and playing similar supporting roles for attacks on a National Directorate of Security division in Kabul, GE 20-20T at 1–4; on the Iraqi embassy, GE 20-23T at 9; on the Afghan National TV station, GE 20-40T at 1–4; and on a border area of Uzbekistan, 20-40T at 16–22. Sharifullah also provided several details about various ISIS-K attacks, including that a 2022 attack against a police commander in Afghanistan's Badakhshan Province used explosives hidden in a parked Corolla rather than a suicide bomber. GE 20-40T at 25–34.

With respect to the Abbey Gate attack, Sharifullah told FBI officers that he was contacted by Yousef (Faridoon's brother) a few days after being released from Pul-e-Charkhi prison in August 2021, who gave him money to purchase a smartphone, which Sharifullah used to contact Qari Nawab, a member of ISIS-K leadership, through Telegram. GE 20-26T at 1–2. Nawab tasked Sharifullah with scouting the route from Sarai Shamali to Airport Circle for checkpoints, and Yousef gave Sharifullah a motorcycle to carry out this assignment. *Id.* at 1–3. At approximately 1:30 p.m. on August 26, 2021, Sharifullah reported to Nawab that the route to the airport at a traffic circle outside South Gate (the main entrance to the airport) was "empty" and clear of checkpoints and Taliban, following which, at Nawab's instruction, Sharifullah drove back to the city and returned the motorcycle to Yousef. GE 20-27T at 10–16; 20-28T at 1, 4, 6, 10–11, 14, 17. Sharifullah said that Nawab called Sharifullah "many times" during the scouting mission. GE 20-28T at 6, 10–11, 17. Sharifullah also told FBI officers that Abdul Rahman al-Logari, a fellow Pul-e-Charkhi prison inmate who he identified through several photographs, carried out the attack through a self-detonated bomb, GE 20-26T at 4–5; 20-29T at 1. Sharifullah stated, however, that he did not know whether Logari in fact used the same route that Sharifullah had scouted to reach HKIA, GE 20-28T at 12. He also could not recall the precise time of the explosion but knew that

it occurred sometime around late afternoon or early evening, and told FBI officers that he was already back in downtown Kabul when it occurred. *Id.* at 1. Sharifullah repeatedly told FBI officers that his role in the HKIA attack consisted solely of scouting the route for Logari. GE 20-27T at 10; 20-28T at 16.

In addition to Sharifullah's statements, the Government introduced undisputed evidence through witness testimony of U.S. service members harmed by the attack that the HKIA attack at Abbey Gate took place at approximately 5:36 p.m. on August 26, 2021, and resulted in the death of thirteen members of the U.S. military and approximately 160 Afghan civilians. It also introduced press releases by ISIS-K claiming responsibility for each of the attacks described by Sharifullah.[6] *See, e.g.*, GE 9-3; 9-4; 9-7; 9-16; 9-17; 9-19; 9-20; 9-22; 9-23; 9-25. Consistent with Sharifullah's description of the suicide attacker for the bus attack on Nepali security guards as Irfan, the ISIS-K public announcement claiming responsibility for the attack identified the attacker as "brother Irfanullah Ahmed." GE 9-4. The Government also introduced photographs of the bus attack on Nepali security guards showing that it took place in the Bana'ee district of Kabul, as Sharifullah claimed, and adduced testimony from victims of the attack who confirmed certain details that Sharifullah related about the attack, including that it took place in 2016, and that the bus followed the same route and left at the same times each day. The Government further introduced a video of the 2022 Badakhshan attack showing, as Sharifullah described, a parked Corolla exploding near a group of people. GE 9-21. The Government also presented testimony by Explosive Ordnance Disposal ("EOD") witnesses that the Abbey Gate attack was perpetrated by a self-detonated bomb that could not have been remotely activated, as well as expert testimony that

[6] The ISIS-K press releases were not admitted for the truth of the statements that ISIS-K carried out the attacks. [Doc. No. 217-6] at 17.

Telegram was ISIS-K's preferred mode of communication and that Sharifullah's phone was wiped clean just before the Pakistanis arrested him, as Sharifullah claimed in his statements.

The defense presented testimony from Ali Hassani ("Hassani"), a linguist and cultural advisor to the U.S. military commander in charge of all forces who remained in Afghanistan on August 26, 2021. Hassani went to all six gates at HKIA multiple times a day between August 17 and August 31, 2021, to coordinate the safe passage of U.S. citizens, green cardholders, NATO members, visa holders, and Afghan officials who were at risk. Hassani testified that the Taliban was in full control of the traffic circle Sharifullah supposedly scouted; and Hassani was required to negotiate with the Taliban to facilitate the entry of evacuees into the airport's main entrance at the South Gate, which the defense argued contradicted Sharifullah's report to Nawab that the traffic circle was clear of Taliban presence. Hassani also testified that Abbey Gate, which was secured by a commander of the Haqqani faction of the Taliban, was the most chaotic and the most crowded gate of all of the six gates. The defense also introduced evidence from the U.S. CENTCOM Report that identified the location of the Taliban checkpoint immediately to the south of Abbey Gate.

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 29 permits a defendant to seek a judgment of acquittal at the close of all evidence if "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). When bringing such a challenge, a defendant "faces a heavy burden." *United States v. Bonner*, 648 F.3d 209, 213 (4th Cir. 2011) (citation omitted). The dispositive question on a Rule 29 motion is whether, after viewing the evidence in the light most favorable to the prosecution and assuming that the jury resolved all contradictions in the testimony in favor of the Government, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). As the Supreme Court has explained, "[t]hat limited review does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Musacchio v. United States*, 577 U.S. 237, 243 (2016). For that purpose, the Court must consider both circumstantial as well as direct evidence, and in weighing the evidence, the Court must resolve all testimonial conflicts and draw all reasonable inferences in the light most favorable to the prosecution. *United States v. Harvey*, 532 F.3d 326, 333 (4th Cir. 2008).

## III. DISCUSSION

The death-results charge, on which Sharifullah seeks acquittal, requires proof beyond a reasonable doubt that (1) the defendant conspired to provide material support to a terrorist organization; (2) that the conspiracy on which he was convicted related to the attack at HKIA on August 26, 2021; and (3) death resulted from that conspiracy. [Doc. No. 217-6] at 42–43 (jury instruction on "Resulting in Death").

Sharifullah does not contest the sufficiency of the evidence with respect to the first element, that is, that Sharifullah participated in a conspiracy to provide material support to ISIS-K.[7] Rather, Sharifullah contends that the evidence is insufficient to establish that anything he did resulted in death at Abbey Gate, the only deaths which the Indictment alleges resulted from the charged conspiracy. In that regard, Sharifullah contends that the only evidence concerning his conduct on August 26, 2021, the day of the Abbey Gate attack, is his own statements admitting to scouting

[7] As discussed above, although Sharifullah initially moved for acquittal on the entirety of Count One of the Indictment, charging Conspiracy to Provide Material Support to a Designated Foreign Terrorist Organization Resulting in Death, in violation of 18 U.S.C. § 2339B, [Doc. No. 213], his renewed motion for acquittal withdraws his sufficiency of the evidence challenge as to the charged conspiracy in violation of 18 U.S.C. § 2339B with a 20-year maximum sentence but renews it as to whether there was sufficient evidence that the charged conspiracy resulted in the deaths at Abbey Gate. [Doc. No. 221].

the route for the suicide bomber Logari, but nothing in those statements establishes that his agreement to scout Airport Road and his purported report that "there was no Taliban" at Airport Circle had anything to do with the actual operation that resulted in the attack at Abbey Gate. [Doc. No. 224] at 18. Sharifullah alternatively argues that even if his conduct as described in his statements were sufficient to establish that his conduct resulted in death, those statements are not sufficiently corroborated to constitute admissible evidence. *Id.* at 25.

### A. Whether There is Sufficient Evidence to Establish that Sharifullah's Criminal Conduct Resulted in Death.

The sufficiency of the evidence must be assessed against the elements of the offense charged. In that regard, Sharifullah was charged with a conspiracy in violation of 18 U.S.C. § 2339B, which prohibits "conspiring" to "knowingly provide[] material support or resources to a foreign terrorist organization" and "if the death of any person results," the defendant "shall be imprisoned for any term of years or for life." 18 U.S.C. § 2339B(a)(1). Before trial, Sharifullah moved for a legal ruling that the enhanced penalty for a death resulting from the charged conspiracy requires proof of proximate causation, as well as but-for causation. [Doc. No. 115]. The Court denied that Motion, holding that "18 U.S.C. 2339B(a)(1)'s penalty enhancement does not require proof of proximate causation or foreseeability, but only 'but for' causation." [Doc. No. 202].

On July 2, 2026, after the trial, the Fourth Circuit issued its opinion in *United States v. Covington*, in which the court held that the imposition of additional liability for bodily injury that "results from" a violation of 18 U.S.C. § 242 requires a finding that the defendant's conduct be both the "but-for and proximate cause of the victim's injury." 180 F.4th 576, 587 (4th Cir. 2026). Based on that decision, Sharifullah contends that the sufficiency of the evidence with respect to

the enhanced penalty under § 2339B must be assessed not only with respect to whether Sharifullah's conduct was the but-for cause of any deaths at Abbey Gate but also the proximate cause of those deaths. [Doc. No. 233] at 1.[8]

1. Under *Covington*, Section 2339B does not require proof of proximate causation to impose the death-results penalty enhancement.

In *United States v. Covington*, the Fourth Circuit held that the imposition of additional liability under 18 U.S.C. § 242,[9] a civil rights statute, for bodily injury that "results from" the charged conduct requires a finding that the defendant's conduct was both the but-for and proximate cause of the victim's injury. 180 F.4th at 587. In reaching that conclusion, the Fourth Circuit relied on a "background principle[]" of criminal law that a "defendant generally may not be convicted unless his conduct is both (1) the actual cause, and (2) . . . the 'proximate cause'[ ] of the result." *Id.* at 584 (quoting *Burrage v. United States*, 571 U.S. 204, 210 (2014)), concluding that "that general rule applies even when a statute does not 'expressly impose' a proximate-cause requirement." *Id.* In its decision, the Fourth Circuit departed from its holding in *United States v. Alvarado*, 816 F.3d 242, 249–50 (4th Cir. 2016) that the enhanced penalty for a "death resulting" from drug distribution prohibited by Section 841(b) of the Controlled Substances Act[10] requires

[8] The Government argues that Sharifullah did not move for acquittal based on his now-asserted proximate cause claim and therefore has forfeited any further consideration of that claim, [Doc. No. 234], but Sharifullah previously raised this issue, which the Court rejected, and as a result he has not forfeited his ability to renew this claim with respect to 18 U.S.C. § 2339B's causation standard. *See United States v. Duroseau*, 26 F.4th 674, 679–80 (4th Cir. 2022) (rejecting government's forfeiture argument because the issue had been fully addressed during the trial even though it was not specifically included within the defendant's Rule 29 motion). In any event, the Court is required to assess Defendant's sufficiency challenge "against the elements of the charged crime," and not against a jury instruction that departed from those elements, *see Musacchio v. United States*, 577 U.S. 237, 243 (2016) (jury instruction misstating elements of crime does not become "law of the case"), an obligation that requires the Court to consider whether the Fourth Circuit's holding in *Covington* changes this Court's conclusion regarding 18 U.S.C. § 2339B(a)(1)'s death resulting element before addressing the merits of Defendant's Rule 29 Motion.

[9] 18 U.S.C. § 242 makes it unlawful for anyone acting under color of law to deprive another person of any federally protected right "on account of such person being an alien, or by reason of his color, or race."

[10] 21 U.S.C. § 841(b) makes it unlawful to distribute a controlled substance and imposes a penalty enhancement if "death results from" the charged conduct.

only but-for causation, explaining that Section 841(b)'s penalty provision is an "exception to the rule that the [g]overnment prove proximate cause when the charging statute calls for a certain result" because drug distribution belongs to a class of conduct for which a resulting death is foreseeable, such that liability is effectively strict. *Covington*, 180 F.4th at 585.

The Government argues that *Covington*'s holding should be narrowly construed since the Fourth Circuit relied in large part on the analogous proximate causation requirement in § 242's sister provision, § 241, as well as other comparable interpretations of the civil rights statutes by other circuits, and further argues that death-results enhancements in other, more recent statutes, such as § 2339B that target dangerous conduct, do not require proximate causation. [Doc. No. 334] at 4–6.

The harmonizing principle concerning whether only actual or but-for cause is required, as in a statute like 21 U.S.C. § 841(b), or both but-for cause and proximate cause are required, as in a statute like 18 U.S.C. § 242, appears to be whether the statute is one whose violation make a resulting death foreseeable. In *Covington,* the Fourth Circuit concluded that the civil rights statute at issue is not a law whose violation makes a resulting death foreseeable, in part because the conduct underpinning such an offense, unlike that criminalized by Section 841(b), does not necessarily make a death known or foreseeable to the defendant. *Covington*, 180 F.4th at 585. ("It is by no means unusual to peg the sentence to factors that were not known—or even foreseeable—to the defendant at the time the crime was committed.").

As Sharifullah argues, "material support" can take on many forms, including providing "money, lodging, transportation, communications equipment, and even funds used to buy medical supplies," and death is not always foreseeable from that kind of support, unlike the distribution of a controlled substance. [Doc. No. 235] at 9. But Sharifullah was not charged with the substantive

offense of providing material support in violation of Section 2339B, only a conspiracy to provide that support in violation of Section 2339B. As a result, in assessing whether death is foreseeable, the proper focus is not on the particular type of support provided but the nature of the conspiracy for which the material support was provided. Given the nature of the conspiracy criminalized by Section 2339B, death is necessarily a foreseeable consequence of any criminalized conduct even if the particular support provided consists only of non-violent behavior that would, in itself, not make death a foreseeable consequence.[11] A conspiracy to provide material support to foreign terrorist organizations certainly involves criminal conduct that makes a death resulting from that conspiracy at least as foreseeable as the conduct criminalized in Section 841(b). For these reasons, a conviction for conspiracy under 18 U.S. Code § 2339B does not require proximate causation, only but-for causation. Nonetheless, for the purposes of this decision, the Court has considered whether the Government adduced sufficient evidence at trial for a reasonable jury to find that the alleged conspiracy that Defendant participated in was not only the actual, or but-for, cause but also a proximate cause of a resulting death.

2. When viewed most favorably to the Government, the evidence sufficiently establishes that a conspiracy that the jury could have found Sharifullah to have participated in, as alleged in the Indictment, was the but-for cause of a death.

With respect to but-for causation, the "death-results" element requires proof that the deaths at HKIA "would not have occurred in the absence of—that is, but for—the defendant's conduct." *Burrage*, 571 U.S. at 210–11. A jury would therefore need to reasonably find that the conspiracy

[11] "Terrorism," the object of which is criminalized by 18 USC 2339B, is defined as the "unofficial or unauthorized use of violence and intimidation in the pursuit of political aims." Terrorism, OXFORD ENGLISH DICTIONARY, https://www.oed.com/dictionary/terrorism_n (last visited June 15, 2026).

to provide material support to ISIS-K that Sharifullah participated in resulted in at least one death at HKIA.

The Defendant contends that such evidence was lacking given that Sharifullah's "purported report that 'there was no Taliban' at the traffic circle had anything to do with the actual operation that resulted in the attack at Abbey Gate[,]" [Doc. No. 224] at 18, and that it would require an impermissible "leap[] of logic" to conclude that Sharifullah's conduct constituted a but-for cause of the deaths at HKIA. *Id.* at 23. In support of that position, Sharifullah points to the absence of any evidence that anyone communicated with Logari, the suicide bomber, or anyone connected with the bomber concerning Sharifullah's scouting report, that the attack's go-ahead was conditioned on the report, that Logari traveled the route Sharifullah allegedly scouted, or that Logari was the actual bomber. [Doc. No. 228] at 11–16.

After drawing all reasonable inferences in the Government's favor, a rational trier of fact could find beyond a reasonable doubt that Sharifullah knowingly participated in a conspiracy resulting in death at Abbey Gate.[12] In that regard, the evidence adduced at trial was that, similar to his role in prior ISIS-K attacks involving a suicide bomber, Sharifullah was tasked as part of that conspiracy with scouting the route from Sarai Shamali to Airport Circle for Taliban checkpoints, he performed that task and informed senior ISIS-K leadership (viz., Nawab) that the route leading to the airport was clear,[13] and Nawab conveyed Sharifullah's "all clear" message to the suicide

[12] As discussed in detail below, the Court finds that Sharifullah's confessions concerning his knowing participation in a conspiracy to provide material support to ISIS-K are sufficiently corroborated.

[13] More specifically, as described by Sharifullah, Sharifullah scouted the route on a motorcycle at approximately 1:30 p.m., roughly four hours before the self-detonating bomb went off at Abbey Gate at HKIA, and returned the "many" calls from, Nawab, who played a senior leadership role within ISIS-K, and informed him that the route leading to the airport was clear. GE 20-27T at 15–16; 20-28T at 1, 4, 6, 10–11, 17.

bomber, who as a result gained access to the airport perimeter through the South Gate traffic circle and, a few hours later, detonated the bomb at Abbey Gate that killed hundreds of individuals.

Sharifullah argues, relying on the cases from the drug context, that the Government failed to prove a "direct, completed link" between Sharifullah's conduct and any death because there is no evidence connecting the alleged scouting report to the bomber, his route, or the timing of the attack. [Doc. No. 228] at 13. But again, that contention is premised on a misplaced focus. The dispositive issue is not whether Defendant's particular actions within the conspiracy had a "direct, completed link" to the deaths, but rather whether the charged conspiracy in which he participated had that effect. The mere possibility that the suicide bomber may have followed a route to reach Abbey Gate different than the one Sharifullah allegedly scouted, as argued by the defense, does not make insufficient the evidence from which the jury could have reasonably concluded that Sharifullah knowingly participated in the same conspiracy to provide material support to ISIS-K as Logari, the suicide bomber, and Nawab and Faridoon, individuals that Sharifullah repeatedly described as core leaders within ISIS-K, and that they planned and executed the Abbey Gate attack in the course of that conspiracy, as they had done on numerous prior occasions. Therefore, even assuming that the particular scouting role that Sharifullah played was not a but-for cause of any death at Abbey Gate, a rational jury could still reasonably conclude that Sharifullah participated in a conspiracy to provide material support to ISIS-K that was the but-for cause of the deaths at Abbey Gate.

3. When viewed most favorably to the Government, the evidence sufficiently establishes that a conspiracy that the jury could have found Sharifullah to have participated in, as alleged in the Indictment, was the proximate cause of a death.

The trial evidence is similarly sufficient for a rational jury to conclude that Sharifullah participated in a conspiracy from which it was foreseeable that death would result.

"'Proximate cause' is often described 'in terms of foreseeability or the scope of the risk created by the predicate conduct' and 'serves . . . to preclude liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity.'" *Covington*, 180 F.4th at 583. Based on the evidence at trial, the jury could have reasonably concluded that Sharifullah knew, based on his past involvement with ISIS-K sponsored suicide attacks, that when asked by ISIS-K leadership to scout the route leading to Airport Circle on August 26, 2021, a terrorist attack by a suicide bomber was underway. Nevertheless, Sharifullah argues that the evidence shows that Sharifullah "scouted a route almost a kilometer away from and hours before the bombing on August 26, 2021; it did not establish that the deaths at Abbey Gate . . . were a natural and foreseeable result of that scouting." [Doc. No. 233] at 10–11. In other words, due to the number of intervening variables, Sharifullah contends that those deaths are nothing more than an "attenuated consequence" of his conduct, for which he is "not legally responsible." *Id.* That contention again fails to acknowledge that a rational trier of fact could have reasonably concluded that it was foreseeable to the Defendant that death would result from the conspiracy he was asked to participate in. In that regard, the jury could reasonably infer that Sharifullah understood that what he was asked to do was in support of and in furtherance of a conspiracy to cause death through the use of a suicide bomber, as reflected in the detailed evidence of Sharifullah's involvement with ISIS-K spanning five years, during which he helped to carry out

numerous lethal attacks. Indeed, every attack that Sharifullah confessed to supporting before the Abbey Gate bombing resulted in a death.

For these reasons, there was sufficient evidence at trial for a rational jury to conclude that Sharifullah participated in a conspiracy to provide material support to ISIS-K that actually and proximately caused the Abbey Gate deaths.

**B. Whether Sharifullah's statements concerning his participation in a conspiracy that resulted in a death at Abbey Gate were sufficiently corroborated.**

Defendant has withdrawn his challenge to the sufficiency of the evidence to corroborate his statements concerning his knowing participation in a charged conspiracy to provide material support for a terrorist organization, but nevertheless contends that his statements are not sufficiently corroborated as to his involvement in the particular conspiracy that resulted in the Abbey Gate deaths, which are the only deaths the Government has charged for the purposes of the death resulting enhanced penalty. [Doc. No. 224]. In opposition, the Government argues that "[t]he undisputed fact that the Abbey Gate attack occurred and resulted in death alone satisfies the corroboration rule," and in the alternative, the corroboration evidence "need only tend to establish—not conclusively establish—the trustworthiness of the confession." [Doc. No. 226] at 14.

1. The Corroboration Rule

The amount and quality of the evidence required to satisfy a defendant's incriminating statements are less than clear. As a starting point, a criminal conviction "must rest upon firmer ground than the uncorroborated admission or confession of the accused." *Wong Sun v. United States*, 371 U.S. 471, 488–89 (1963); *accord United States v. Abu Ali*, 528 F.3d 210, 234 (4th Cir. 2008). Although "[t]he corroborative evidence does not have to prove the offense beyond a

reasonable doubt . . . there must be substantial independent evidence that the offense has been committed in the first instance, and that the evidence as a whole proves beyond a reasonable doubt that the defendant is guilty." *United States v. Rodriguez-Soriano*, 931 F.3d 281, 288 (4th Cir. 2019) (citing *Abu Ali*, 528 F.3d at 235). This modern articulation of the corroboration rule came about after the Supreme Court in *Opper* rejected a requirement that the government's corroboration evidence "provide independent proof of the *corpus delicti,* or of commission of a crime." *Abu Ali*, 528 F.3d at 235 (citing *Opper v. United States,* 348 U.S. 84, 89–90 (1954)). In sum, to "prove the offense through the statements of the accused," there must be "independent evidence" that "supports the essential facts admitted sufficiently to justify a jury inference of their truth . . . to find guilt beyond a reasonable doubt." *Id.* To be sure, that evidence need not independently "prove" the defendant's guilt of the charged crime, so much as "fortif[y] the truth of the confessions." *Id.* at 237.

Three cases by the Fourth Circuit reflect the unclear contours of the corroboration rule. In *U.S. v. Stephens*, a police sergeant heard four or five gunshots, apprehended the defendant, and recovered a five-shot revolver lying next to five spent shell casings. 482 F.3d 669, 671 & n.2 (4th Cir. 2007). The defendant told the officer that he had fired the shot because his drug supplier "Red" had threatened to kill him after the defendant had failed to pay for drugs that the supplier had fronted him. *Id.* at 671. During the trial, the government corroborated the defendant's confession with testimony of an agent who confirmed that the suspected drug dealer known as "Red" existed and drove a white Mazda, just as Stephens had said. *Id.* On appeal, the Fourth Circuit reversed the jury's guilty verdict as to both the conspiracy to distribute cocaine charge and discharging a firearm in relation to a drug trafficking charge. The Fourth Circuit found that the government had failed to introduce sufficient evidence to corroborate the defendant's confessions and thereby establish his

guilt. The court reasoned that the government had failed to "establish the necessary link between [the defendant and Red] to prove that those two were engaged in a conspiracy to sell cocaine," and therefore "his conviction for using a firearm in connection with a drug trafficking crime [was] also infirm." *Id.* at 673.

A year later, in *United States v. Abu Ali*, the Fourth Circuit upheld the convictions of a member of *al Qaeda* for various terrorism offenses based on the reliability of the defendant's admissions. 528 F.3d at 238. In *Abu Ali*, the defendant confessed in detail to joining *al Qaeda* and plotting with its leaders to commit terrorist activities against the United States. *Id.* at 235–36. Despite a lack of direct evidence from Abu Ali's co-conspirators to corroborate his confessions, the Fourth Circuit held that the circumstantial evidence adduced by the government at trial "tend[ed] to establish the trustworthiness of [the defendant's] confession that he intended to and did contribute services to al-Qaeda, receive funds from al-Qaeda, and provide material support to terrorists and a designated foreign terrorist group." *Id.* at 237–38. That circumstantial evidence included evidence recovered from al-Qaeda safehouses, including documents identifying the defendant by an alias and photographs of items that Abu Ali had described during his confession; evidence of al-Qaeda paraphernalia in Abu Ali's dorm room and home; and coded communications with one of his claimed co-conspirators. *Id.* The Fourth Circuit explained that although "the independent evidence does not *prove* Abu Ali's guilt of any crime," the evidence was sufficient to "fortif[y] the truth of the confession" and therefore adequately corroborate his "admissions that he had long wanted to join al-Qaeda, to further its goals, and to provide it support and assistance." *Id.* at 237.

More recently, in *United States v. Rodriguez Sorriano*, the Fourth Circuit granted the defendant's motion for acquittal, holding that the trial evidence was insufficient to corroborate the

defendant's confession. 931 F.3d at 290–91. In *Rodriguez Sorriano,* the defendant purchased two firearms from a licensed firearms dealer and completed Bureau of Alcohol, Tobacco and Firearms ("ATF") paperwork indicating that he was the actual buyer of the firearms and not "acquiring the firearm(s) on behalf of another person." *Id.* at 284. A year later, one of the firearms was recovered in Washington, D.C., during a homicide investigation, following which the defendant admitted to buying the guns for an acquaintance at their request, and was charged with making a false statement to a licensed firearms dealer pertaining to the purchase of the firearms. *Id.* at 285. During the trial, the government introduced into evidence the ATF Form for the purchase, the defendant's confession, and the testimony of an ATF agent about the recovery of the firearm solely to explain why the investigation into the firearms purchase began and not to establish that the defendant no longer had possession of the firearm. *Id.* at 286. The Fourth Circuit found this evidence insufficient to corroborate the defendant's confession, reasoning that the government could not rely on the defendant's subsequent interview with agents in which the defendant reaffirmed his confession because that subsequent confession was equally uncorroborated and did nothing to fortify the truth of the confession. *Id.* at 290. Likewise, the defendant's statement to the agent that he no longer had the gun, was uncorroborated because the agent's trial testimony that spoke to the use of the gun to commit a murder was not admitted for the truth of the matter asserted and therefore did not provide any independent corroboration of the straw purchase. *Id.* For all these reasons, the Court held that the government failed to establish that the defendant knowingly made the required false statement at the time of purchase.

2. Direct and circumstantial independent evidence corroborate Sharifullah's confession as to his participation in a conspiracy that resulted in death.

As an initial matter, the Government has presented, as the corroboration rule requires, "substantial independent evidence that the offense has been committed in the first instance." *Id.* at 288. The Government contends that the undisputed fact that the attack at HKIA occurred and resulted in death suffices, without more, to corroborate Sharifullah's confessions about his participation in the conspiracy that resulted in those deaths, specifically the scouting the route for the suicide bomber.[14] [Doc. No. 226] at 15–18. But while necessary in assessing whether there exists sufficient corroboration, the undisputed fact that a terrorist attack resulting in death occurred on August 26, 2021 at the Abbey Gate, without more, does not prove anything about Sharifullah's participation in the conspiracy that resulted in that attack and therefore does not sufficiently corroborate Sharifullah's statements of his participation in that conspiracy.[15] Nevertheless, there was also presented substantial circumstantial and direct evidence, independent of Sharifullah's statements, that sufficiently establishes the "trustworthiness" of his statements that he knowingly participated in the conspiracy that resulted in the Abbey Gate attack through his scouting the route as requested by senior ISIS-K leadership.

---

[14] In support of its position that proof of the crime alone is sufficient to corroborate the defendant's confession, the Government relies upon the Fourth Circuit's opinion in *United States v. Hall*, 396 F.2d 841 (4th Cir. 1968). In *Hall*, the Fourth Circuit affirmed the district court's denial of the defendant's motion for acquittal as to his jury conviction for the robbery of a federally insured savings and loan association only after finding that "there was undisputed and detailed evidence, independent of [the defendant's] confession, to show that a robbery of the bank had been committed," *and* the defendant's confession "was substantiated by corroborative evidence tending 'to establish the trustworthiness' of it." *Id.* at 845. Given the full record relied upon in that case, the Court finds little, if any, support, in *Hall* for the Government's position that evidence of the crime alone is sufficient corroboration of a defendant's involvement in that crime.

[15] In *Stevens*, where there was undisputed evidence that a gun was fired, as there is here that an attack occurred, there was no evidence (other than the defendant's uncorroborated recanted confession) linking the defendant to the charged drug trafficking conspiracy that allegedly led to the discharge of the firearm. And, as discussed above, the Fourth Circuit on those facts found that the defendant's confession was not sufficiently corroborated.

First, as Defendant essentially concedes through his withdrawal of his Rule 29 Motion with respect to the conspiracy offense without the enhanced penalty, the Government introduced sufficient independent evidence to corroborate Sharifullah's statements as to his participation in a conspiracy to provide material support to ISIS-K. That evidence included a fake business card featuring Sharifullah's name and picture that was seized from an ISIS-K safehouse in 2019, which Sharifullah admitted was created for him by ISIS-K to conceal from his parents his membership in the terrorist organization.

The Government also introduced evidence to corroborate other aspects of Sharifullah's confessions. First, Sharifullah's statements made to FBI officers that he was incarcerated at Pul-e-Charkhi prison where he met Logari, the Abbey Gate suicide bomber, is partially corroborated by the witness testimony of the journalist who interviewed Sharifullah in 2020 during his incarceration at Pul-e-Charkhi prison. Second, Sharifullah's statement that he scouted the route shortly after being released from Pul-e-Charkhi prison by the Taliban is partially corroborated by expert testimony that the Taliban had freed prisoners at Pul-e-Chakri in August 2021, as Sharifullah claimed, as well as evidence concerning the existence and details of the route that Sharifullah claimed to have scouted at the request of ISIS-K leadership.[16] And Sharifullah's statement that he used Telegram to communicate with Nawab on August 26, 2021 after he scouted the route is partially corroborated by expert testimony that Telegram was ISIS-K's preferred mode of communication and that Sharifullah's phone was wiped clean just before the Pakistanis arrested him, as Sharifullah stated.[17] The Government also presented evidence corroborating aspects of

[16] That evidence, introduced by the Government, included a map of the HKIA, [GE 21-7], and accompanying witness testimony, showing "Airport Road" in Kabul that ends in a crossroad, "Airport Circle," to enter the airport, consistent with Sharifullah's descriptions.

[17] The Government also introduced evidence that the suicide bomber likely used the same type of explosives that Sharifullah described and the explosives were not detonated remotely, as Sharifullah also described. While

Sharifullah's statements to the FBI about other ISIS-K bombings for which he claimed to have played a supporting role, similar to that he described in connection with the Abbey Gate attack,[18] thereby increasing overall the trustworthiness of his statements to the FBI officers concerning Abbey Gate.

Sharifullah points to the testimony of his witness Hassani concerning the scores of Taliban personnel present at Airport Circle as evidence that undermines the trustworthiness of his confession to the FBI officers that he reported to Nawab "there was no Taliban" at the traffic circle. [Doc. No. 224] at 27. In substance, Sharifullah essentially argues that Hassani's testimony so fundamentally contradicts a core aspect of Sharifullah's statement concerning his scouting that it sufficiently rebuts any independent evidence of corroboration that the Government presented. But in assessing the sufficiency of the evidence with respect to corroboration, the evidence must be viewed most favorably to the Government, *see United States v. Wilson*, 118 F.3d 228, 234 (4th Cir. 1997) (on a Rule 29 motion, a court may not "weigh the evidence or review the credibility of the witnesses"), and therefore to the extent Hassani's testimony is unfavorable to the Government, the Court must assume the jury could disregard it. *See, e.g.*, *United States v. Maynes*, 880 F.3d 110, 114 (4th Cir. 2018).

---

Sharifullah's statements in this regard may reflect publicly known information, that evidence adds to the overall trustworthiness of Sharifullah's statements concerning his involvement with ISIS-K conspiracies that resulted in death. In addition, although not relied upon for purposes of the Court's ruling, the overall consistency of Sharifullah's detailed statements, repeatedly made over an extended period of time, certainly "fortifies the truth of the confession" and adds to the overall trustworthiness of Sharifullah's confessions.

[18] As recited above, *infra* I.B., that corroborating evidence included the testimony of the victims from the 2016 ISIS-K attack against Nepali embassy guards and post-attack photographs from that attack showing the location of the attack in the Bana'ee district and that their transport was an unarmored minibus, as well as a video showing a parked Corolla exploding near a group of several people, consistent with Sharifullah's statement to FBI officers that a 2022 attack against the Badakhshan police commander attack used explosives hidden in a parked "Corolla" rather than a suicide bomber. Little, if any, of this evidence appears to have been publicly known, thereby providing "a strong inference that the defendant could not have known of such detailed facts but for his participation in the crime." *United States v. Waller*, 326 F.2d 314, 315 (4th Cir. 1963).

Although the corroboration presented in this case was limited and did not extend to all aspects of Sharifullah's statements, the Government has presented sufficient independent direct and circumstantial evidence sufficient to "fortif[y] the truth of the confession" and establish the Defendant's guilt beyond a reasonable doubt that a charged conspiracy resulted in death.

## IV. CONCLUSION

For the above reasons, the evidence at trial was sufficient for a jury to reasonably find that the Defendant participated in a charged conspiracy that resulted in death and accordingly, it is hereby

**ORDERED** that Defendant's Rule 29 Motion challenging the sufficiency of the evidence as to the death-resulting element of the charged conspiracy be, and the same hereby is, **DENIED**.

The Clerk is directed to forward a copy of this Order to all counsel of the record.

Alexandria, Virginia
August 25, 2026

/s/
Anthony J. Trenga
Senior United States District Judge